# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

---

### BROWNING

*v.*

## NATIONAL CAPITAL BANK OF WASHINGTON.

---

DECEIT; FALSE REPRESENTATIONS; FRAUD; EVIDENCE.

1. Where one person, knowing that another is indebted to himself and others to an extent materially affecting his credit, for the purpose of inducing a bank to make a loan to such other person, writes to the president of the bank that to the writer's personal knowledge the intending borrower is worth a specified amount, of which a certain amount is in real estate, but says nothing about his indebtedness, and in reliance upon such representations, which are false, the bank makes the loan and loses the money because of the insolvency of the borrower, the person making such false representations is liable to the bank in an action for deceit, although he did not know them to be false.

2. In such case, testimony of the president and directors of the bank that they would not have made the loan to the borrower, if the defendant had disclosed the indebtedness of the former, is admissible.

3. Evidence as to the reputed wealth of the borrower, in such a case, and as to his integrity and truthfulness, is inadmissible.

4. Declarations of the borrower, in such a case, to the defendant, upon the defendant's showing him the letter containing such representations, as to its correctness, and statements of the

borrower and of the president of a bank other than the plaintiff
that the borrower was supposed to be worth the amount speci-
fied in the letter, are inadmissible, the statements of the letter
professing to be based upon the personal knowledge of the
defendant and not upon such statements.

No. 753. Submitted February 8, 1898. Decided May 5, 1898.

HEARING on an appeal by the defendant from a judg-
ment on verdict in an action on the case for an alleged
deceit. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action on the case for alleged deceit, instituted
by the appellee, the National Capital Bank of Washington,
the plaintiff below, against the appellant, Horatio Browning.
The declaration contains three counts, varying the statement
of the one and same cause of action.   By the first count, it
is alleged that the defendant, intending to deceive and
defraud the plaintiff, wrongfully and deceitfully encouraged
and persuaded the plaintiff to loan to John B. Scott $2,500
by falsely, deceitfully and fraudulently representing to the
plaintiff in writing, that the said Scott was worth, to the
defendant's *personal knowledge*, $75,000,—over $60,000 of
which was in real estate; and for that the plaintiff, confid-
ing in the said representation of the defendant, loaned to
said Scott the sum of $2,500; whereas, at the time of such
representation the said Scott was not worth $75,000, or any
other sum, in real estate or otherwise, which was well known
to the defendant, and not to the plaintiff, and the said Scott
was then indebted to the defendant in a large sum, to wit,
$4,000, and to divers other persons in divers other sums to
a large amount; all of which was well known to the
defendant, and not to the plaintiff; and the defendant con-
cealed the same and fraudulently deceived the plaintiff by
the representation aforesaid, by means whereof, etc.

The other two counts state the same cause of action with
some variations, and with some more special narrative of

the facts.   The defendant pleaded not guilty, and issue was joined on that plea.

The declaration was based upon the following letter, written by the defendant and addressed to John E. Herrell, who was at that time the president of the plaintiff:

"WASHINGTON, D. C.,
"December 20, 1895.

"JOHN E. HERRELL, Esq.:

"Mr. John B. Scott, of the Howard House, has purchased an interest in the National Hotel, and is now of the firm of Crosby, Burton & Company.   Mr. Scott finds he needs some money in order to run the hotel on nearly a cash basis— that is to say, cash for marketing.   Mr. Scott is worth to my personal knowledge seventy-five thousand dollars, over sixty thousand dollars in real estate.   If you can lend him twenty-five hundred dollars it will be a great accommo- dation.                    "Yours truly,

"H. BROWNING."

It was in proof on the part of the plaintiff that the loan of $2,500 was made to Scott, by way of discount of a note drawn by Crosby, Burton & Company, at three months, and indorsed by Scott, and that such loan was made in reliance upon and upon the faith of the letter of the defendant, and would not have been made but for the representations con- tained in the letter of December 20, 1895.

When the note became due, the defendant wrote another letter to Herrell, dated March 23, 1896, introducing Scott, and saying that the latter desired to renew the note, and that he was a very old acquaintance of his, the defendant, and that he felt safe in saying that the bank might safely rely on any statement that he, Scott, might make.   And the note was accordingly renewed; but before the renewed note fell due the hotel firm of which Scott was a member failed, and made an assignment to the defendant for the benefit of creditors, and the assets that came into the hands of the

assignee only enabled the latter to pay on the note the sum of $300. It was after this that the present suit was brought against the defendant for deceit, founded upon the letter of December 20, 1895.

It is quite apparent that, at the time of the loan of the $2,500, Scott was largely indebted to various persons, and among them to the defendant himself; and that the value of his property was much less than the amount of his liabilities, and very much less than the amount represented in the letter of December 20, 1895.

The verdict and judgment being against the defendant, he has appealed.

*Mr. Wm. F. Mattingly* for the appellant:

1. The court erred in permitting the president and each of the directors of the plaintiff to testify that he would have voted against discounting the $2,500 note if he had been told certain particulars in connection with Scott's purchase of an interest in the firm running the National hotel.

So far as the *bona fides* of the defendant were concerned, the facts were in evidence. That the defendant, in the letter, did not go into a detailed statement of Scott's assets and liabilities, was manifest. It was plainly improper to permit these witnesses to testify, after the changed condition of circumstances stated, what they would have done sixteen months previously.

2. The gist of an action for false representation concerning the credit of another is fraud in the defendants, and damage to the plaintiff. Fraud means an intention to deceive. If there was no such intention, if the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue. *Haycraft* v. *Creasy*, 2 East, 92; *Young* v. *Covell*, 8 John. 23. This action can not be sustained without proving actual fraud in the defendant, or an intention to deceive the plain-

tiff by false representations. The simple fact of making representations, which turn out not to be true, unconnected with a fraudulent design, is not sufficient. *Lord* v. *Goddard,* 13 How. 198, 211; *Gordon* v. *Buller,* 105 U. S. 553; *Russell* v. *Clark's Exrs.,* 7 Cr. 93; *Chester* v. *Comstock,* 40 N. Y. 576; *Still* v. *Little,* 63 N. Y. 427; *Derry* v. *Peek,* 14 App. Cases, 337; *Nash* v. *Title Co.,* 163 Mass. 574; and 35 L. R. A. 447, where will be found a valuable note covering the entire subject; *Cowley* v. *Smyth,* 50 Am. Rep. 432: 46 N. J. Law, 380. A director and member of the finance committee of a bank made certain representations as to the solvency of the bank. The charge of the court, "that if the defendant made the representations as matter of his own knowledge, and so positively asserted that he knew the fact to be as he represented, and the fact was not as he represented, although he may not have known them to be false, and the plaintiff acted upon the representations, they not being true, and suffered damage, the plaintiff may recover," was held error. This case also shows what the defendant may give in evidence to show his good faith.

*Mr. O. B. Hallam* and *Mr. J. J. Darlington* for the appellee:

1. One who undertakes to furnish information touching the financial circumstances of another, with a view to enabling the latter to obtain credit, is bound to answer fully and fairly, if he answers at all. To state only such facts as would tend to induce the credit sought and knowingly to withhold other facts, equally well known, which would militate against it, would be simply to spread a trap for the party seeking the information, or, as in the present instance, for the party to whom it was volunteered by the defendant, and would be a palpable fraud. *Taff* v. *Lee,* 3 B. & P. 371; *Newall* v. *Randall,* 32 Minn. 171.

The question now to be considered is whether, under these circumstances, it was error to admit evidence tending

to show that the appellee was misled by this suppression of material facts. In order to recover, it was either essential for the appellee to show that it would not have made the loan had the whole truth been disclosed to it, or it was not essential to do so. If essential, the evidence admitted was not only the best, but perhaps the only proof which could have been offered upon that subject. If, on the other hand, no such evidence was essential, then the admission of it could not have prejudiced the defendant, and his objection is not well taken. *Davis* v. *Coblens*, 12 App. D. C. 51.

2. Testimony of reputation was properly excluded. The defendant induced the appellee to part with its money, not by representing to it the general reputation of the party to whom it was asked to make the loan, but by giving it the assurance of his personal knowledge as to certain specific facts. And he did this, as he himself testified, well knowing at the time the difference between what others told him and what he himself personally knew, and that he expected the appellee to understand his letter in the latter sense. See *Doggett* v. *Emerson*, 3 Story C. C. 733; *Fisher* v. *Mellen*, 103 Mass. 503.

It would be one thing to advise the plaintiff of the general reputation of an applicant for a loan, leaving the plaintiff to inquire as to the truth or accuracy of that reputation; it is quite another to disarm all inquiry by stating facts to be true, of the informant's own personal knowledge.

3. There has been a considerable conflict among the authorities, from a comparatively early period, upon the question whether one making false representations to obtain credit for another, without proof of an actual fraudulent intent, is liable therefor in an action for deceit. The affirmative of this proposition was upheld in *Pasley* v. *Freeman*, 3 T. R., and the negative in *Haycraft* v. *Creasy*, 2 East, both of which decisions were by a divided court. The authorities seem now agreed upon the principle that, if the representation, though fairly positive in form, was intended by

the defendant merely as the expression of an opinion, and was made in good faith, he is not liable ; but, if the representation was intended, not as a matter of opinion, but of a fact, he is liable.   Thus, *Haycraft* v. *Creasy*, 2 East, 92 ; *Lord* v. *Goddard*, 13 How. 198, 211 ; *Gordon* v. *Butler*, 105 U. S. 553, 558 ; *Still* v. *Little*, 63 N. Y. 427 ; *Nash* v. *Title Co.*, 163 Mass. 574, and nearly, if not all, of the other authorities cited on behalf of the appellant, were cases of representations which were, although some of them made in the form of actual knowledge, nevertheless merely the expression of conclusions or opinions, and the reasoning of the courts proceeds upon that ground.   But no case can be found, in which a defendant, admitting he knew when he made the representation that it would be understood in a certain sense, and that it was untrue in that sense, has been held exempt from liability because of any claim or expectation on his part that no actual loss would follow.   The authorities to the contrary are very numerous.   *Doggett* v. *Emerson*, 3 Story C. C. 733 ; *Fisher* v. *Mellen*, 103 Mass. 503. To make a representation, knowing it to be false, or without knowing whether it be true or false, is equally unjustifiable in both law and morals, and it is immaterial in which of these ways the statement was made. *Mitchell* v. *Zimmerman*, 4 Tex. 75 ; *Smith* v. *Richards*, 13 Pet. 36 ; *Atwood* v. *Wright*, 29 Ala. 352 ; *Lynch* v. *Trust Co.*, 18 Fed. R. 486.   If he positively affirms a fact of his own knowledge, and his affirmation is false, his representation is deemed fraudulent.   *Stone* v. *Denny*, 4 Metc. 157 ; *Cabot* v. *Christie*, 42 Vt. 121 ; *Bennett* v. *Judson*, 21 N. Y. 238 ; *Cottshausen* v. *Simon*, 47 Wis. 105 ; *Bird* v. *Kleiner*, 41 Wis. 138.   After referring to *Lord* v. *Goddard*, 13 How. 138, the court, in *Bank* v. *Bank*, 59 Fed. R. 345, say : "By the weight of modern authority it is held *the law* imputes an intention to deceive in every case where one recklessly asserts that to be true which is untrue, and concerning which he pretends to have a knowledge which he has not."   See, also, 1 Cooley, Torts, 501 ; *Brooks* v. *Ham-*

*ilton*, 15 Minn. 31; *Lynch* v. *Trust Co.*, 18 Fed. R. 486; *Collier* v. *Henry*, 76 Mo. 25; *Cooper* v. *Schlesinger*, 111 U..S. 148; *Winston* v. *Young*, 31 Minn. 80; *Nash* v. *Title Co.*, 163 Mass. 574; *Cowley* v. *Smith*, 46 N. J. 432; *Stubbs* v. *Johnson*, 127 Mass. 219; *Andrews* v. *Jackson*, 37 L. R. A. 402.

In the present case, the uncontradicted testimony is that the appellee did understand the appellant's letter to be a representation of facts within his own knowledge, and the appellant testifies that he knew, when he wrote the letter, that it would be so understood. Upon these facts, the court might well have directed a verdict for the plaintiff; there was nothing which required submission to the jury in respect of them.

Answering the appellant's contention that the gist of the action is the intent to deceive and defraud, it may be said that it is inserted in the declaration because of the holding in *Addington* v. *Allen*, 11 Wend. 374, that such is necessary formal allegation and is akin to the formal allegation of malice in an action for slander. *Duncan* v. *Thwartes*, 3 B. & C. 556, 585.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

At the trial there were several questions of the admissibility of evidence reserved and excepted to by the defendant; but the main and principal question of the case is presented by two instructions given to the jury at the instance of the plaintiff, and by the refusal of three prayers offered for instruction by the defendant. The instructions granted and refused are as follows:

"1. If the jury believe from the evidence that the defendant, for the purpose of enabling Scott to borrow $2,500 from the plaintiff, wrote and delivered to him the letter of December 20, 1895; that said Scott delivered the same to plaintiff, and that the statements contained in said letter as to Scott's financial condition, as of the defendant's own personal

knowledge, were materially and grossly untrue in fact, but that the plaintiff was ignorant of their falsity, and that it loaned the said $2,500 to the said Scott or to his firm in reliance upon the truth of the defendant's said representations and because of such reliance, then the plaintiff is entitled to recover in this action, unless the jury shall further believe from the evidence that the defendant at the time of writing the said letter did have personal knowledge of property then owned by the said Scott, and did from his said personal knowledge of the said property honestly and in good faith believe the said Scott to be worth $75,000, and that he was worth $60,000 in real estate.

"2. If the jury believe from the evidence that the defendant volunteered to give the plaintiff information as to the financial responsibility of the said Scott in order to enable him to obtain a loan of $2,500 of it, he thereby assumed the duty of communicating to the plaintiff fully, fairly, and in good faith all his knowledge upon that subject, without either misrepresentation or suppression of any fact or facts known to him which would materially affect the question of such financial responsibility. If the defendant did not from his own personal knowledge of the property owned by Scott honestly and in good faith believe him to be worth $60,000 in real estate and $75,000 altogether, and if the said Scott was not in fact worth nearly the amounts stated, or if at the time of writing his letter of December 20th, 1895, the defendant knew that the said Scott was indebted to himself and others to an extent materially affecting his credit, and if the jury believe from the evidence that he designedly withheld the fact of such indebtedness from the plaintiff, and that if the plaintiff had known of the said indebtedness it would have refused the credit, then the plaintiff is entitled to recover, provided the jury further believes from the evidence that it made the said loan upon the faith of the defendant's said letter and in ignorance of the said indebtedness of the said Scott."

Instructions asked on behalf of the defendant, and refused :

" 1. If the jury believe from the evidence that the defendant, Horatio Browning, at the time he wrote the letter in evidence of December 20th, 1895, made the statements therein contained in good faith and in the honest belief that they were substantially true, then the plaintiff is not entitled to recover, although the jury may further believe from the evidence that the statements in point of fact were not true.

" 2. Unless the jury believe from the evidence that the defendant Browning made the statements in the letter of December 20th, 1895, with a fraudulent purpose to deceive the plaintiff, then the plaintiff is not entitled to recover.

" 3. If the jury believe from the evidence that the defendant Browning was mistaken as to the truth of the statements contained in the letter of December 20th, in evidence, but that he made them in good faith, believing them to be substantially correct, and did not make them with a fraudulent purpose to deceive the plaintiff, then the plaintiff is not entitled to recover."

It is very clear that if the principles embodied in the instructions given on request of the plaintiff, as applied to the facts of the case, be correct, the principles stated in the prayers offered by the defendant can not be maintained, in view of the undisputed facts, however correct they may be as applied to a different state of case. The plaintiff contends that the terms of the letter should be taken literally and according to the usual and ordinary meaning of the terms employed, and as we must suppose the plaintiff understood and acted upon the terms of the letter; and when the defendant volunteered to represent to Herrell, the president of the bank, to whom Scott was not known, that the latter *was worth to his, the defendant's, personal knowledge, seventy-five thousand dollars, of which over sixty thousand dollars was in real estate,* and that that representation was made for the

express purpose of inducing the bank to loan the $2,500, which would not have been loaned but for the representation made, and which representation was grossly false in fact, the question is simply one as to who shall bear the loss resulting from the false representation. The plaintiff contends that upon principles of justice, and the well settled rules of law, the defendant ought to bear the consequences of his own voluntary act, whereby he has induced another to act to his loss and injury. That if the representation as to the worth of Scott was in fact grossly false, and therefore calculated to deceive, and the defendant was without reasonable ground to believe in the truth of the statement made by him, such as would justify a man of ordinary business capacity and caution in affirming the existence of a particular state of facts to be true within his own personal knowledge, then there was fraud and deception, and the defendant should bear the consequences.

But the defendant, on the other hand, contends that although the representations made were in fact untrue, and therefore calculated to deceive, yet if made in good faith and in the honest belief that they were substantially true; or if made without a fraudulent purpose to deceive the plaintiff; or if the defendant was mistaken as to the truth of the representations made, but made them in good faith, believing them to be substantially true, and without a fraudulent intent to deceive the plaintiff, then, on either of these propositions of fact being found, the plaintiff would not be entitled to recover.

The defendant, in support of his contention, relies principally upon the well known English case of *Haycraft* v. *Creasy*, 2 East, 92, and the cases of *Russell* v. *Clark*, 7 Cranch, 93, and *Lord* v. *Goddard*, 13 How. 198.

In the first of these cases, that of *Haycraft* v. *Creasy*, it was held, upon the facts there in proof, that the action was not maintainable; though the language of the representation was, no doubt, very strong, and professed to be made

of personal knowledge.  But the representation was not
made of any particular amount of wealth possessed by the
party recommended, nor for any particular amount of credit
to be extended.  The representation was regarded by the
court as rather matter of opinion on the part of the de-
fendant, as to the credit that might be safely extended to
the party in whose behalf the representation was made,
than the affirmation of an existing fact within the knowl-
edge of the defendant.  The case was decided against a
strong dissenting opinion by Lord Kenyon, Chief Justice,
and whose opinion has not been without influence in sub-
sequent cases.  There is much in that opinion that must
commend itself to every one seeking to place the rule of re-
sponsibility upon the solid grounds of reason and justice.
The rule, however, as laid down by a majority of the court
in that case, is, that if it appear that the representation was
made by the defendant *bona fide,* and with a belief of the
truth of it, no action can be maintained; as the foundation
of the action is fraud and deceit of the defendant and dam-
age to the plaintiff, by means thereof.  And with respect to
the terms of the representation used in that case, taking the
assertion of *personal knowledge secundum subjectam materiam,*
viz., the credit of another, it was held to have no other
meaning than a strong belief founded on what appeared to
the defendant to be reasonable and certain grounds for an
opinion.  Lord Kenyon did not so construe the representa-
tion, and hence he was for holding the defendant liable.

The case of *Russell* v. *Clark* presents some peculiar fea-
tures that distinguish it from the present case.  It was a
case in equity, and the letters there used as the foundation
of the claim set up by the plaintiff were ordinary letters
of recommendation, and it was held that a misrepresen-
tation of the solidity of a mercantile house made under
a mistake of the fact, without any interest or fraudu-
lent intention, will not sustain an action, although the
plaintiff may have suffered damage by reason of such mis-

representation. And after stating the circumstances that would give a right of action for fraud and deceit, the court proceeds to say : "But this does not appear to the court to be the case described. It is proved incontestably, that when the letters on which this suit depends were written, Robert Murray & Co. were in high credit, and were carrying on business to a great extent, which was generally deemed profitable. The bill charges particular knowledge in Clark and Nightingale, that this apparent prosperity was not real. But this, as well as every other allegation of fraud, is explicitly denied by the answer ; and the answer, being responsive to the bill, is evidence. Had the plaintiff been able to exhibit proofs which would have rendered this fact doubtful, it might have been proper to have directed an issue for the purpose of trying it ; but he has exhibited no such proofs. In writing the letters, then, recited in the bill, Clark and Nightingale stand acquitted of the imputation of fraud." After referring to the circumstances under which the letters were written, the court proceeds to say : "Merchants know the circumstances under which recommendations of this description must be given. They know that when one commercial man speaks of another in extensive business, he must be presumed to speak from that knowledge only which is given by reputation. He is not supposed to have inspected all the books and transactions of his friend, with the critical eye which is employed in a case of bankruptcy. He must, therefore, be supposed to speak of the credit, *not of the actual known funds of the person he recommends*; of his apparent, not of his real solidity. In such a case it is certainly incautious and indiscreet to use terms which imply absolute and positive knowledge. It may, perhaps, be admitted that, in such a case, fraud may be presumed on slighter evidence than would be required in a case where a letter was written with more circumspection. Yet, even in such a case, where the communication is honestly made, and the party making it has no interest in the

transaction, he has never been declared to be responsible
for its actual verity. The reason of the rule is, that mer-
chants generally possess, and are therefore presumed, in
their correspondence, to speak from that knowledge only of
the circumstances of other merchants, which may be ac-
quired by observing their course of business, their punctu-
ality, and their general credit."

The letters in that case contained no such representation
of personal knowledge as is contained in the letter in this
case, and it is manifest, from the whole tenor of the opinion,
that the court was contemplating and treating of a very dif-
ferent class of letters from the one under consideration here.
In the letter before us its author does not simply speak of
the commercial credit of his friend, Mr. Scott, *but of the ac-
tual known funds owned by him*; of the specific amount of
property, real and personal, owned *to the personal knowledge*
of the defendant.

In the case of *Lord & Jenness* v. *Goddard*, the letter of rec-
ommendation simply represented that the parties, West and
Daby, in whose favor the letter was written, "were men well
worthy of credit, and good for what they wished to pur-
chase;" and it was held that if there was no intention to
defraud and deceive, in giving the letter, but the writers of
it honestly stated their own opinion, believing at the time
that they stated the truth, they were not liable, although
the representation turned out to be entirely untrue. The
letter in that case was very different in character from the
one here presented.

It is certainly true that fraud and deceit are essential ele-
ments to the maintenance of actions of this character; but
what constitutes fraud in such cases is a question about
which there has been a great deal of discussion, and no little
diversity of opinion. It has often been asserted and held
by courts of high authority, that where the defendant affirms
that to be true within his own knowledge which he does
not know to be true, to induce another to act upon it, and

it is acted upon, such affirmation is equally fraudulent and deceptive, as where he asserts that to be true which he knows to be false. There is deception in both cases, and if wrong and injury results the remedy ought to be the same. And so where a representation of a fact, susceptible of actual knowledge, is recklessly made, the party making it being indifferent how the truth of the matter really stands, and damage results, the party should be held liable.

In the case of *Cooper* v. *Schlesinger*, 111 U. S. 148, 155, a question of misrepresentation and liability therefor was involved. In the trial of the case in the court below the circuit judge, in his charge to the jury, discussed the question of misrepresentation and the elements therein that create liability, and that charge was extensively quoted and affrmed by the Supreme Court when reviewing the case on writ of error.

In the charge, the circuit judge, among other things, said: "It is not necessary, to constitute a fraud, that a man who makes a false statement should know precisely that it is false. It is enough if it be false, and if it be made recklessly, and without an honest belief in its truth, or without reasonable ground for believing it to be true, and be made deliberately and in such a way as to give the person to whom it is made reasonable ground for supposing that it was meant to be acted upon, and has been acted upon by him accordingly. It is important that this party knew, or had reason to know, that the representations he was making at the time were false, so as to make an element constituting a fraud that would entitle a party like the defendant to maintain a suit upon it  .  .  .  A false representation does not amount to a fraud in law, unless it be made with a fraudulent intent. There is, however, a fraudulent intent if a man, either with a view of benefiting himself, or misleading another into a course of action, makes a representation which he knows to be false, or which he does not believe to be true."

And the Supreme Court, Mr. Justice Blatchford delivering

the opinion, referring to the charge of the circuit judge, said: " Taking the two sentences excepted to in connection with the rest of the charge, the jury were properly instructed, that a statement recklessly made, without knowledge of its truth, was a false statement knowingly made, within the settled rule. In the charge on this branch of the case we see no error." The other branch of the case related to the rule of damages.

And the principle thus stated appears to be strictly in accordance with the rulings of the English courts upon this subject. According to the decisions of those courts, made in many cases, if a party undertakes positively to assert that to be true which he does not know to be true, and which he has no sufficient or reasonable grounds for believing to be true, in order to induce another to act upon the faith of the representation, and the representation is acted upon and it turns out to be false, and the person who has acted upon the representation has been deceived to his damage, he is entitled to maintain an action for the deception. For whoever pretends to have positive knowledge of the existence of a particular fact, or state of things, when in truth he knows nothing about it, does in reality make a wilful representation which he knows to be false; and if such representation is made in order that another may rely upon it, and act upon it, and it is acted upon, and damage results therefrom, the person making the representation is in principle guilty of wilful deception and fraud. *Pawson* v. *Watson,* Cowp. 788; *Jenkins* v. *Hutchinson,* 13 Q. B. 748; *Evans* v. *Edmonds,* 13 C. B. 786; *Peek* v. *Derry,* 59 L. T. (N. S.) 78; S. C. 14 App. Cas. 337. Many other cases could be cited in support of this well-founded principle, but it is unnecessary to cite more than those to which we have referred.

And though fraud and deceit are essential elements to be shown to exist, in order to maintain the action, yet it is not necessary to prove that the false representation was made from a corrupt motive of gain to the defendant, or wicked and

corrupt motive of injury to the plaintiff. It is enough if the representation that is made was known to the person making it to be untrue, or that he did not know it to be true, and had no sufficient reason to believe it to be true, and which was intended or calculated to induce another to act on the faith of such representation, in a way to produce injury, and damage actually results. Such a wilful, false representation is, in a legal sense, a fraud. *Polhill* v. *Walter*, 3 B. & Ad. 123; *Milne* v. *Marwood*, 15 C. B. 778. For, whatever may be the motive, if a man states what is false within his knowledge, or what he has no reasonable ground for believing to be true, and makes the representation with a view to induce another to act upon it, who does so act upon it to his injury, the law imputes to the party making the representation a fraudulent intent, although he may not have been in fact actuated by a morally bad motive. *Foster* v. *Charles*, 7 Bing. 107; Kerr on Fraud and Mistake, pp. 55, 56. Hence it has been decided in many cases, and is laid down as text law, that where a party makes a representation without knowing whether it be true or false, he is, both in morals and legal contemplation, as blamable as if he made the representation knowing it to be false. And, therefore, if a party states a material fact *as true to his own personal knowledge to induce another to act upon such representation,* and that fact is susceptible of knowledge, but proves to be false, he is guilty of a fraud which renders him liable to the person who relies upon and acts upon the representation as true, to his injury; *and it is no defense for the defendant that he believed the representation to be true.* Bigelow on Frauds, 513, 514; *Cabot* v. *Christie*, 42 Vt. 121; *Busterud* v. *Farrington*, 36 Minn. 320; *Bullitt* v. *Farrar*, 42 Minn. 8; *Munroe* v. *Pritchett*, 16 Ala. 785; *Mayer* v. *Salazar*, 84 Cal. 646; *Litchfield* v. *Hutchinson*, 117 Mass. 195; *Fisher* v. *Mellen*, 103 Mass. 503; *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, and the cases there cited; and *Lynch* v. *Trust Co.*, 18 Fed. Rep. 486.

In this case, the instructions given, and the prayers for

instructions that were refused, must be considered in respect
to the terms of the letter of December 20, 1895, and the
other facts in proof.   Mere abstract propositions, asserting
general principles, would hardly be sufficient to instruct a
jury in a case like the present.   The letter of December 20,
1895, is not an ordinary letter of a merchant to his corre-
spondent, at a distance, stating his opinion of the standing
and mercantile credit of the bearer of the letter.   Such let-
ters, as said by Chief Justice Marshall in *Russell* v. *Clark,*
are well understood among merchants.   But the present
letter was addressed to the official head of an institution with
which neither the bearer of the letter nor the writer would
appear to have had any previous business relations what-
ever.   The object of the letter was to give assurance as to
the safety of the specific loan proposed; and to effect this
object, the defendant stated, what he manifestly supposed to
be essential to accomplish the object in view, that Scott "*is
worth to my personal knowledge* seventy-five thousand dol-
lars, over sixty thousand dollars in real estate."   This was
not mere matter of opinion, but the assertion of positive
personal knowledge of the facts stated.   This letter was of-
fered as the basis of the loan applied for, and was accepted
and acted upon as such.   That the letter did not represent
the facts as they really and truly existed, would seem to be
unquestioned.   That Scott was insolvent at the time, or, at
least, greatly embarrassed in his financial circumstances,
would seem to be beyond doubt; and the business relations
of the defendant with Scott would seem to make it reason-
ably certain that the defendant knew, or ought to have
known, the financial condition of Scott.   In his letter he
says nothing of Scott's liabilities, but states only his pro-
fessed personal knowledge of the value of Scott's real and
personal estate.   This statement he offered as the induce-
ment to the plaintiff to loan the specific sum of $2,500.

Now, in view of the general principles stated, we perceive
no substantial objection to the instructions granted, treating

the case as presented in either of the instructions. These instructions refer to the facts in proof, and if those facts, as enumerated in either of the instructions granted, were found by the jury, we are clearly of opinion, they would entitle the plaintiff to recover. But as to the prayers offered by the defendant, they did not attempt to refer specifically to the facts of the case, nor to the particular terms of the letter of December 20, 1895. They offered no construction of the particular terms of the letter. They simply propounded general propositions that would apply correctly to conditions of case different from the present. That the representation made by the defendant was false in fact, is not a serious question in the case; and if that representation was known at the time to be false there could be no question of belief in its truth, and if made without knowing whether it was true or false, *professing to be made as of the personal knowledge of the defendant,* he can not be heard in defense to say that he believed the representation to be true when it was not. *Litchfield* v. *Hutchinson,* 117 Mass. 195; *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403, and cases there cited. In such case the fraud consists in stating that the party knows the thing to exist when he does not know it to exist, and may know it to be false, and, if he does not know it to exist, his representation that *it does exist to his personal knowledge* is false, and therefore a fraud and a deception.

We think, therefore, there was no error in either granting the instructions for the plaintiff or in rejecting the prayers offered by the defendant.

With respect to the rulings of the court below on questions of evidence excepted to, we perceive no error. We think the court was clearly right in admitting the testimony of the president and directors of the bank to the fact, that had the defendant by his letter have disclosed the fact of the indebtedness of Scott and of the firm of which he was a member, the loan would not have been made. It was incumbent upon the plaintiff to show that it relied upon the

representations made to it by the defendant in making the loan ; and it could certainly show what were the constituent elements in the representation that formed the basis of the confidence that was reposed in the representation. A large indebtedness on the part of Scott would certainly affect his credit, and the fact of such indebtedness was important to be brought to the knowledge of the bank, as it would likely affect its determination as to whether to make the loan or to refuse it. The question of the indebtedness of Scott was a material consideration in determining the question of the extent and value of his credit ; and hence the plaintiff could properly show that it was induced to extend credit upon a state of case that was false in fact, as represented by the defendant.

The court below was clearly right in excluding evidence as to the reputed wealth of Scott, and, also, as to his integrity and truthfulness of character. These were matters that were not involved in the issue on trial, and could only tend to mislead the jury.

The declarations of Scott made to the defendant, when the letter of December 20, 1895, was shown to him, as to its correctness, were clearly inadmissible. The letter did not, as addressed to the plaintiff as an inducement to its action, profess to be based upon the representations of Scott, but upon the personal knowledge of the defendant. If the representation of Scott, as to the extent of his property, had been all that was required, the letter of the defendant giving assurance of his personal knowledge as to the extent and value of the property owned by Scott, would have been wholly unnecessary. Scott could have made the representations to the bank for himself ; and thus have avoided a secondary representation.

We know of no principle upon which the mere statement of Scott, or of the president of the Central National Bank (an institution different from the plaintiff) could be admitted to prove that Scott was supposed to be worth $75,000. The

letter of December 20, 1895, did not profess to be founded upon any such loose and unreliable information. Nor could evidence of Scott's financial reputation be admitted, for the purpose of showing that he was generally reputed to be worth $75,000. If the letter had professed to have been founded upon that sort of information, the question would have been different. *Fisher* v. *Mellen,* 103 Mass. 503.

Upon the whole case, we find no error that requires the reversal of the judgment, and it must therefore be affirmed; *and it is so ordered.*                    *Judgment affirmed.*