**OWEN v. SCHWARTZ et al.**

No. 9887.

United States Court of Appeals
District of Columbia Circuit.

Argued April 13, 1949.

Decided Sept. 26, 1949.

Mr. Mark P. Friedlander, Washington, D. C., with whom Mr. Leroy A. Brill, Washington, D. C., was on the brief for appellant.

Mr. Albert F. Adams, Washington, D. C., for appellees.

Before CLARK and PROCTOR, Circuit Judges, and LEDERLE, District Judge sitting by designation.

LEDERLE, District Judge.

This is an appeal from a judgment of no cause for action based upon a verdict directed in favor of defendant-appellees by the trial court at the close of the evidence presented by plaintiff-appellant, wherein appellant also complains of rulings sustaining objections to testimony which she proffered.

On April 22, 1947, plaintiff, Miss Thelma F. Owen, filed her complaint against defendant Max C. Schwartz, a real estate broker, and defendants Theodore S. and Grace L. Grape, owners of real estate, who had engaged defendant Schwartz as their sales agent. Plaintiff sought return of a $5000 forfeit money deposit she had paid to defendant Schwartz in connection with an executory written contract dated February 13, 1947, negotiated by Schwartz, as the admitted agent for defendants Grape, whereby plaintiff was to purchase from defendants Grape a house known as 3351 Mt. Pleasant Street, N. W., Washington, D. C., with some adjoining land. The complaint alleged fraud in the inducement in that defendant Schwartz had made two material oral misrepresentations upon which plaintiff had relied, namely, "that the land to be conveyed was 1¼ acres and that a $30,000.00 loan could be secured on said house and land," alleging further that plaintiff had notified defendants of her election to rescind promptly upon learning of such fraud, but that defendants had refused to honor such election and return her $5000.00. The complaint also alleged that the contract did not contain a description of the land nor any statement concerning the loan to be obtained thereon. The answer admitted these last two allegations, as well as admitting that the tract contained substantially less than one acre, but denied the fraud and raised a number of other defenses hereinafter discussed.

The record discloses that, as plaintiff learned shortly after signing the contract, the area of the land was half of the alleged 1¼ acres, being actually only ⅝ of an acre, defendants had no commitment for a loan and the highest commitment plaintiff could obtain was $25,000.00, which was $5000.00 short of the $30,000.00 which defendant Schwartz knew plaintiff needed to finance the purchase of this property, which she intended to use for apartment and rooming house purposes.

After issue was joined and before trial, this case was considered at a pre-trial hearing under Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A. The issues as framed by the resulting pre-trial order included plaintiff's contention that the initial contract she had signed on February 13, 1947, was signed and had blanks completed in the handwriting of defendant Schwartz and specified that the land consisted of 1¼ acres, plus plaintiff's further contention that, prior to signing the contract "the broker (defendant Schwartz) had represented to her (plaintiff) that * * * he had got a trust for $30,000.00." On the issues thus framed, without objection, the case proceeded to trial. In his opening statement, plaintiff's counsel stated, without objection, that, "on February 13, 1947, she signed a contract, which was in the handwriting of the real estate agent on a printed form. It had in this contract the description only by number and the street, and 1¼ acres was in this written contact."

Plaintiff testified that defendant Schwartz first took her to see the property on February 12, 1947, the day before the contract was signed, and plaintiff said she wanted her sister, Miss Lola Owen, who was helping her finance this project, to see the property. On the following day, plaintiff, her sister, defendant Schwartz and his assistant, one Talbutt, went to the premises. Plaintiff proffered the testimony of herself and her sister that, in the kitchen of this house before the contract was filled in or signed on this second day, February 13, 1947, defendant Schwartz stated that the land consisted of 1¼ acres and that he had a $30,000.00 commitment for a loan on the property; that plaintiff asked him to insert a statement relative to this $30,000.00 loan commitment in the contract; that defendant Schwartz stated that it would sound better to simply specify the cash payment, "because we know we have got the $30,000.00." Upon defendants' objection that such testimony of prior oral statements varied the terms of a written con-

tract, the trial court rejected such proffers, or, in instances where such testimony was introduced, it was stricken upon the same objection made by defendants.

It was admitted by the defendants, upon argument of this appeal, that the legal basis for their objections was not well founded and that the law as stated in First National Bank v. Fox, 1913, 40 App.D.C. 430, certiorari denied 231 U.S. 751, 34 S.Ct. 322, 58 L.Ed. 466, is the correct rule, namely that, although a contract is in writing and its terms cannot be varied by parol evidence, parol evidence of false and fraudulent misrepresentations made to induce the contract is admissible to defeat its enforcement or secure relief therefrom. However, defendants contend that testimony of the two alleged misrepresentations, as to the acreage of the land and as to defendants having a $30,000.00 loan commitment, were inadmissible and could not support plaintiff's action for various reasons.

■ Considering first the $30,000.00 loan which plaintiff needed to finance the purchase of this property, it is defendants' contention that plaintiff is limited to the phraseology of her complaint that, defendant Schwartz represented that "a $30,000.-00 loan could be secured on said house and land." Defendants cite a number of cases which they claim support their contention that a representation that a loan could be obtained upon property is promissory in nature and, therefore, not a misstatement of an existing fact upon which a charge of fraud could be predicated. The sole testimony either proffered by plaintiff and refused, or introduced by plaintiff and stricken, was to the effect that defendant Schwartz had stated prior to the plaintiff's execution of the contract that he had a $30,000.00 loan commitment on this property. Such a statement is a representation of a material and existing fact, and if it be false and relied upon by the purchaser, it is fraudulent; and, upon rescission by the purchaser, the purchaser is entitled to recover back the amount of his deposit. See Kreshover v. Berger, 1909, 135 App.Div. 27, 119 N.Y.S. 737; Schwab v. Esbenshade, 1913, 151 Wis. 513, 139 N.W. 420; Crawford v. Mobile, J. & K. C. R. Co., 1903, 83

Miss. 708, 36 So. 82, 102 Am.St.Rep. 476; Weems v. Georgia Midland & G. R. Co., 1890, 84 Ga. 356, 11 S.E. 503.

Upon hearing of a motion for new trial, the defendants raised for the first time the contention that there was a variance between the allegations of the complaint and the testimony in this respect and upon appeal, defendants place their main reliance upon such a claimed variance to defeat this charge of fraud.

Defendants concede that Rule 15(b) of the Federal Rules of Civil Procedure permits amendments to conform to the evidence. However, it is defendants' contention that the misstatement of fact as to defendants having a loan commitment never got into the evidence and, therefore, was not evidence to which the pleadings could be conformed by amendment. This is neither a proper analysis of the proceedings nor a proper application of Rule 15(b) for the reason that the issue as to whether or not plaintiff would be permitted to rely upon this oral misstatement of an existing fact as to defendants having a $30,000.00 loan commitment was squarely presented in the trial of this case, and the issue was determined adversely to the plaintiff as a matter of law when the trial court sustained defendants' objection that this constituted parol evidence varying the terms of a written contract. Defendants place great reliance upon the pronouncement of the trial court made in overruling plaintiff's motion for a new trial, when defendants raised for the first time a claim of variance, viz: "No motion was made to amend the * * * complaint, and if there had been, the court, of course, would have had to refuse it because the amendment of the pleadings is in the court's discretion." In this connection, Rule 15(b) also provides that a motion for amendment of the pleadings to conform to the evidence may be made at any time, even after judgment, and further, "failure so to amend does not affect the result of the trial of these issues." However, the issue as to whether plaintiff could rely upon this oral misstatement of an existing fact, as to defendants having a $30,000.00 loan commitment, was tried, without objection of variance, and

was adjudicated adversely to plaintiff as a matter of law.

■ The purpose of Rule 16, Federal Rules of Civil Procedure, is to formulate the issues for trial, and when the issues are formulated at a pre-trial hearing, the court is required to enter an order reciting such action. When entered, such pre-trial order controls the subsequent course of the action. This procedure was followed in the instant case, and the issue so formulated as to this loan commitment was that plaintiff claimed defendant Schwartz stated prior to her signing the contract that he had a $30,000.00 loan commitment on the property, and defendants denied that defendant Schwartz had made this statement. While, technically speaking, the present legal argument would have been avoided if the pre-trial order had specified that the pleadings were amended in this respect, still this issue as to a misstatement of existing fact as to defendants having the loan commitment was formulated at the pre-trial hearing and incorporated into a formal pre-trial order which has never been modified, and which "controls the subsequent course of the action," including this appeal.

Consequently, we reject defendants' argument of variance and decide that this issue was properly presented to the trial court, was determined adversely to plaintiff as an attempt to vary the terms of a written contract by parol evidence, which ruling was concededly erroneous. On this phase alone the case has to be reversed for a new trial.

■ As to the alleged representation that the tract contained 1¼ acres when in fact it contained only ½ that acreage, defendants rely upon general statements appearing in a number of cases to the effect· that where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations; that, if, having eyes, he will not see matters directly before them,

where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness and has been misled by overconfidence in the statements of another; and the same reasoning applies when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained. Such statements must be interpreted in the light of the peculiar facts and circumstances involved in the cases where the pronouncements were made. Viewed in such a way, the statements do not militate against plaintiff's position on this phase of the case. Considering these cases in the order cited in defendants' brief, we find the following:

Shappirio v. Goldberg, 1904, 192 U.S. 232, 24 S.Ct. 259, 48 L.Ed. 419, involved a claimed misrepresentation as to the boundaries of an irregularly shaped city lot. The deed correctly described each boundary of the lot by feet and inches, and the irregular shape of which the purchaser complained was apparent on the face of the deed. Before contracting, the purchaser had given this correct description to his real estate agent for investigation and checking. Actually, there was no showing of any reliance upon the alleged misrepresentations, as the purchaser had relied upon his own agent's investigation of the boundaries based upon a correct and complete written description. The case also presented the element of laches operating against the purchaser.

Farrar v. Churchill, 1890, 135 U.S. 609, 10 S.Ct. 771, 34 L.Ed. 246, involved sale of a plantation and incorrect statements in a written memorandum as to acreage cleared and acreage above the Mississippi overflow, which memorandum was given to the prospective purchaser by the vendor's sales agent upon the agent's express statement to the prospective purchaser that he had never seen the plantation, knew nothing of it or of the statements in the memorandum and that the prospective purchaser should make his own investigation. The prospective purchaser spent a whole day at the

plantation, inspecting it on horseback throughout its length and breadth before signing the contract to purchase, and also, was given possession two months before receiving the deed from which he asked relief. Here, again, was a case of no reliance upon the misstatements.

Slaughter's Adm'r v. Gerson, 1872, 13 Wall. 379, 20 L.Ed. 627, was a suit to collect the purchase price of a steamboat which defendant steamboat operator had purchased from plaintiff upon plaintiff's express statement that he knew nothing about steamboats and that the prospective purchaser should examine it himself and talk to its captain before signing the contract. The purchaser defended on the ground that plaintiff had misrepresented that the boat loaded drew only 3 feet of water, and that actually it drew 6 feet and had gone aground in 5 feet near one dock on the purchaser's route, which had only 3 feet of water. The judgment for the plaintiff was affirmed, and the Supreme Court pointed out that there was evidence showing that, prior to the purchase, defendant-purchaser and his son, who became captain of the boat after purchase, with two of defendant's carpenters, made a run in the boat from Baltimore to New York, examined the boat thoroughly and measured the draft, and defendant was informed by plaintiff's captain and defendant's own men that the draft was greater than his maximum limit of 3 feet and, therefore, not fit for his purposes. Again, we have a case of no reliance upon anything said by the seller and a detailed technical examination made by the purchaser.

On page 936 of 35 L.Ed., in Farnsworth v. Duffner, 1891, 142 U.S. 43, 12 S.Ct. 164, 168, the Supreme Court succinctly sums up this whole case thus:

"This is the whole case presented by the record. The vendors pretended to sell only a tax-title. They specially guarded themselves against any rights of actual settlers. The validity of their title and the extent of it were matters apparent on the records, and open to the inspection of the purchaser. [The purchaser] did not act on their representations that the title was good, but brought his own counsel from home to examine those records, and acted upon his judgment of the title (and also spent two days with the county surveyor). The conduct of the defendants (vendors) supports their testimony, that they believed there was validity to their title."

Rescission at the suit of the purchaser was refused and, again, in a case where there had been no reliance upon statements made by the seller.

Graziani v. Arundell, 1924, 55 App.D.C. 21, 299 F. 886, involves the claim of the purchaser, who had examined the premises, that the seller had represented that there were 5 rooms on the second floor of a 3-floor building whereas there were only 3 rooms on this floor. Certainly, examining a floor where there are only 3 rooms instead of 5 is a far cry from two ladies looking at a house and adjoining land which defendant real estate expert says contains 1¼ acres when it contains only ⅝ of acre. The true distinction was expressed thus in Starkweather v. Benjamin, 1875, 32 Mich. 305–306:

"The defense rested mainly on the ground that the purchaser saw the land, and was as able to judge of its size as Starkweather. We do not think the doctrine that where both parties have equal means of judging there is no fraud, applies to such a case. The maxim is equally valid, that one who dissuades another from inquiry and deceives him to his prejudice is responsible. It cannot be generally true that persons can judge of the contents of a parcel of land by the eye. When any approach to accuracy is needed, there must be measurement. When a positive assurance of the area of a parcel of land is made by the vendor to the vendee, with the design of making the vendee believe it, that assurance is very material, and equivalent to an assurance of measurement."

Defendants then cite a number of state court cases which have adopted the so-called "Massachusetts Rule", to the effect that if the true boundaries are pointed out, misrepresentations as to area are not actionable. In addition to the portion quoted by defendants from Mabardy v. McHugh, 1909, 202 Mass. 148, 88 N.E. 894, 23 L.R.A., N.S., 487, 132 Am.St.Rep. 484, 16 Ann.Cas.

500, that opinion also discloses that the Massachusetts court recognized a split of authority on this subject. This court has not adopted the rigid "Massachusetts Rule". See: Dulin v. Sharp, 1915, 43 App.D.C. 550; 55 Am.Jur. 538, Sec. 67; 55 Am.Jur. 547, Sec. 75; 5 Williston on Contracts, Rev.Ed., 4166, Section 1493.

Defendants point to the fact that sometime in February or March, 1947, plaintiff had a real estate expert inspect the property, and he located the boundaries without difficulty. However, this case will have to be retried in any event, and, from the record presented here, it does not appear that the boundaries of the tract in question were pointed out to plaintiff or her sister or that they knew or could have located such boundaries. Plaintiff and her sister were rooming house operators. They were assured by defendant Schwartz, an experienced real estate expert that the tract contained 1¼ acres. Here also, as in the case of Seek v. Harris, 1942, 76 U.S.App. D.C. 404, 132 F.2d 19, an examination of the plat would not have disclosed the area of the property in the tract which defendant Schwartz had described in Exhibit 1 as "Lot 3351, Mt. Pleasant St., N. W., in Square ——— with improvements thereon known as ——————— in the District of Columbia," and in Exhibit 2 as "Lot ——— in Square ——— with improvements thereon known as 3351 Mt. Pleasant St., N. W., * * * in the District of Columbia."

The contract produced at plaintiff's request by defendants as the initial contract and introduced as Exhibit 1, was dated February 13, 1947, bore only three signatures, those of Talbutt, assistant to defendant Schwartz, plaintiff and defendant Theodore Grape, the blanks had been completed in handwriting, the property described as stated in the preceding paragraph hereof and the document did not contain any statement as to area of the tract. Plaintiff and her sister testified that plaintiff signed only one initial contract on February 13, 1947; that its blanks were written in by defendant Schwartz; that it was signed by Schwartz; that they did not remember Talbutt signing it; and that it

contained a statement that the land consisted of 1¼ acres. Plaintiff's sister testified positively that Exhibit 1 was not the document she signed on February 13, 1947.

Exhibit 2 produced by defendants purported to be a typewritten copy of Exhibit 1, which was presented to plaintiff at her home by defendant Schwartz when guests were present. Plaintiff asked defendant Schwartz to wait; but at his instance and upon his statement that Exhibit 2 was merely a typewritten copy of the initial contract signed by the parties and that he was in a hurry, plaintiff signed it without examining it. This contract does not contain any statement as to area of the land. It also appears from the testimony of plaintiff's sister that the real contract signed by the parties called for a $40,000.00 payment instead of $44,800.00. Plaintiff also testified as to a $40,000.00 contract. The trial court held as a matter of law that the real contract entered into by the plaintiff was Exhibit 1, calling for a consideration of $44,800.00, which did not specify the area of the land, but described it only as "Lot 3351, Mt. Pleasant St., N. W. in Square ........with improvements thereon known as ................... in the District of Columbia."

Upon a re-trial of this case, the issue as to what was the actual contract entered into by plaintiff should be submitted to the jury for its determination.

As outlined above in connection with the issue as to the claimed loan commitment, under the same circumstances this case proceeded to trial, and was tried, without objection, upon a pre-trial order specifying that plaintiff was relying upon a written contract which contained a statement that the area of the land was 1¼ acres, which claim had been repeated, without objection, in the opening statement of plaintiff's counsel. Although an amendment of the complaint would be advisable, Rule 8(e) (2), Federal Rules of Civil Procedure, permits a party to set forth two or more statements of a claim alternatively or hypothetically, which could be done if plaintiff wishes to rely upon re-trial alternatively upon an unproduced contract containing the acreage and calling for a $40,000.00 payment, and

on Exhibit 1 produced by defendants at plaintiff's request.

Defendants Grape disclaim any liability for oral representations made by their agent, defendant Schwartz, because the contract, Exhibit 2, provides, "This contract contains the final and entire agreement between the parties hereto and * * * they shall not be bound by any terms, conditions, statements, warranties, or representations, oral or written, not herein contained." It is the position of defendants Grape that plaintiff was notified by this provision of the contract that the agent's authority went no further than the representations embodied in the written contract, and, as between plaintiff and defendants Grape, plaintiff could not show that the agreement was procured by the fraudulent oral representations of the agent. In this connection, defendants rely upon the following cases:

Jones v. Bankers' Trust Co., D.C.1916, 235 F. 649; Pease v. Fitzgerald, 1916, 31 Cal.App. 727, 161 P. 506; Gridley v. Tilson, 1917, 202 Cal. 748, 262 P. 322; J. B. Colt Co. v. Odom, 1924, 136 Miss. 651, 101 So. 853, 854; J. B. Colt Co. v. McCullough, 1925, 141 Miss. 328, 105 So. 744; Canon City Industrial Stores Co. v. McInerney, 1922, 71 Colo. 492, 208 P. 457. Of these cases relied upon by defendants, Jones v. Bankers' Trust Co. was reversed upon a rehearing reported in D. C., 239 F. 770, and Pease v. Fitzgerald and Gridley v. Tilson were subsequently limited by Speck v. Wylie, 1934, 1 Cal.2d 625, 36 P.2d 618, 95 A.L.R. 760, so as to deprive a vendor of this defense in a suit for rescission.

As disclosed by the cases collected in annotations appearing in 75 A.L.R. 1032, 127 A.L.R. 132, and 133·A.L.R. 1360, there is a conflict of opinion among the courts as to whether or not a provision in a sale contract, that only conditions incorporated therein shall be binding, precludes a defrauded purchaser in a suit with the vendor from relying upon oral representations made by the vendor's agent to induce the purchaser to sign the contract. This matter was considered by the American Law Institute in preparing its Restatement of Agency and, as published in 1933, Section

260(2) thereof provides: "A contract obtained by an agent through fraudulent misrepresentations of facts may be rescinded by the other party although it provides that it shall not be affected by representations not contained therein."

Illustration 1 in the comment on this Subsection reads: "A, selling agent of land for P, sells distant land to T, misrepresenting it to be high, dry, and free from all incumbrances. The contract provides that: 'No agent of this company has authority * * * to make any reference, representation, or agreement not contained in this contract, and none not contained herein shall be binding upon the seller, or in any wise affect the validity of this contract or form any part thereof * * *.' T can rescind this contract." Following that publication, a number of cases have followed the rule as thus stated, including the California case of Speck v. Wylie, supra, wherein prior rulings were limited so as to bring the California rule of law in line with Restatement Section 260(2).

This problem is one of first impression in this jurisdiction, and it appears to this court that the rule set forth in Restatement of Agency, Section 260(2) on this subject is the majority and better rule. See: 55 Am.Juris. 559, Sec. 85.

As heretofore noted, plaintiff seems to be relying upon an unproduced written contract in defendants' possession, dated February 13, 1947, which specifies that the tract of land contains 1¼ acres. There is also present in this record Exhibit 1, admittedly signed by plaintiff, which defendants concede to be the contract entered into by the parties. The portion of Exhibit 1 appearing in the Joint Appendix on appeal does not disclose that this contract contained the quoted clause upon which defendants Grape rely. The record discloses that Exhibit 2, which contains this clause, was presented to plaintiff by defendant Schwartz after Exhibit 1 was signed, when plaintiff had guests present and, at defendant Schwartz' instance, plaintiff signed it hurriedly without reading it upon the representation of defendant Schwartz that it was an exact typed duplicate of the original contract and that both he and plaintiff

were in a hurry. Upon a re-trial, this apparent factual issue, as to whether either Exhibit 1 or the claimed prior unproduced contract contained the quoted clause, could be determined.

■ The plaintiff testified, "I bought the property on the understanding there was a $30,000.00 commitment on it; otherwise, I wouldn't have taken it." Upon defendants' motion, the court struck out this testimony. Plaintiff likewise proffered the testimony of her sister that she would not have approved the contract and would not have drawn a $3000.00 check she advanced to assist the plaintiff if defendant Schwartz had not made the two representations complained of. The trial court sustained an objection to this proffer. Such excluded testimony is admissible as direct proof of reliance upon the misrepresentations, such reliance being one of the necessary elements of plaintiff's case. See: Browning v. National Capital Bank of Washington, 1898, 13 App.D.C. 1; Cressler v. Rees, 1889, 27 Neb. 515, 43 N.W. 363, 20 Am.St.Rep. 691; Bernstein v. Gross, 5 Cir., 1932, 58 F.2d 154, 155.

The plaintiff rescinded promptly upon learning of the claimed fraud, actually, within a few days, and the status quo would have been complete if defendants had returned her deposit.

The judgment appealed from is reversed and the case remanded to the trial court for a new trial.

Reversed.