**TRINITY UNIVERSAL INSURANCE CO., a corporation, Appellant,**

v.

**Richard Lawrence MOORE, Jr., Appellee.**

No. 2011.

Municipal Court of Appeals for the District of Columbia.

Argued June 17, 1957.

Decided July 18, 1957.

1. Code 1951, § 16–403.

Raymond C. Kates, Washington, D. C., for appellant.

Bond L. Holford, Washington, D. C., with whom Donald J. Caulfield, Washington, D. C., was on the brief, for appellee. P.

Brice Horton, Washington, D. C., also entered an appearance for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

The question presented is whether an insurance company which paid an automobile property-damage claim to its insured, was entitled as subrogee to recover against the tort-feasor who was responsible for the damage.

Appellant insurance company, to whom we shall refer as Trinity, insured the automobile of Conley against property damage, the policy containing a $100 deductible clause. Later Conley was involved in a collision with Moore. This action was brought against Moore by Conley and his insurer Trinity. The trial court held defendant Moore liable and awarded plaintiff Conley the $100 deductible amount but refused to award any amount to Trinity. Such refusal is the subject of this appeal.

The judge gave no reason for his decision, but it seems clear from the transcript that he felt Trinity was not entitled to recover because it failed to prove subrogation by a written agreement.

It should first be noted that the complaint alleged that under the policy Trinity paid Conley the amount of his loss (less the deductible amount) "and became subrogated to that amount of the total claim"; and that these allegations were not denied in the answer. There is therefore at least a question whether plaintiffs should have been required to prove that which was not denied.

Turning to the substantive question, we think it was wrong to hold that Trinity had no right to sue as subrogee. The evidence established that Trinity had paid Conley for his damage and received from him an assignment or subrogation agreement. This was sent to the Trinity home office in Texas,

and was not available for production at the trial.

■ We have recently had occasion to state the familiar and accepted rule in this language: "The right of subrogation is based upon principles of equity and natural justice, and courts have liberally applied the principle of subrogation for the protection of those who are its natural beneficiaries." Bahn v. Shalev, D.C.Mun.App., 125 A.2d 678, 679. Thus is compelled the ultimate discharge of an obligation by the one who in good conscience ought to pay it. Otherwise, either the insured would be unjustly enriched, or the guilty third party would be freed of his obligation to pay. Standard Acc. Ins. Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288.

■ To effectuate this time-honored policy of the law, courts have consistently ignored technicalities and held that an insurer may enforce its rights against a tortfeasor, independently of a subrogation provision in the insurance contract.[1]

■ Courts have been equally consistent in holding that the insurer's right does not depend upon an actual, formal assignment. "By far the majority of cases have held that an insurer may be subrogated to the insured's rights against a tort-feasor, although no formal assignment has been executed." Appleman, Insurance Law and Practice, § 4053. Equity confers "instanter" upon the insurer who has paid, the same rights which belonged to the policyholder. See Putnam v. Commissioner of Internal Revenue, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144. This is sometimes called an assignment by operation of law. It does not depend upon an actual assignment. Restatement, Security, § 141.

■ There was nothing in this case to remove it from the general rules just stated. Accordingly, we must hold that Trinity should not have been denied its right to sue and recover against the tort-feasor.

■ A question of damages remains for discussion. In their briefs in this court both sides agree that the proper measure of damage is the value of the car at the time of the collision, less such salvage value as it may have had. Plaintiffs presented evidence as to the value of the automobile and witnesses said it was "a total loss" and "beyond repair." But there was no evidence as to what salvage or "junk" value it had. A witness was asked as to salvage value, but there was no response to the inquiry. It seems necessary to have an answer to that question, in order to determine the true amount of the loss. See Lore v. All-Weather Storm-Window Co., D.C.Mun.App., 107 A.2d 660.

Accordingly the case will be remanded, with instructions to enter judgment for plaintiff Trinity Universal Insurance Company; and (if counsel cannot agree upon the amount) the trial court shall take testimony on and determine the single question as to what credit or deduction, if any, is to be made for salvage value.

Reversed, with instructions.

1. National Garment Co. v. New York, C. & St. L. R. Co., 8 Cir., 173 F.2d 32; Atlas Factors v. Ocean Acc. & G. Corp., Sup., 121 N.Y.S.2d 175; Contractors, Pacific Naval Air Bases v. Pillsbury, D.C. N.D.Cal.S.D., 105 F.Supp. 772; Appleman, Insurance Law and Practice, § 4931, see cases cited in Note 2; also § 4052; Blashfield, Cyclopedia of Automobile Law, Vol. 3, p. 2616; Berry on Automobiles (7th ed.), Vol. 6, § 6.542.