LONDON GUARANTEE AND ACCIDENT
COMPANY, Ltd., Appellant,

v.

ENTERPRISING SERVICES, INC.,
a corporation, Appellee.

No. 3228.

District of Columbia Court of Appeals.

Argued May 13, 1963.
Decided June 27, 1963.

Willam Clague, Washington, D. C., with whom Francis C. O'Brien, Washington, D. C., was on the brief, for appellant.

David N. Webster, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Filderman Corporation, trading as Todd's Discount Store, entered into a bailment contract with appellee, hereinafter referred to as E.S.I., for the storage of certain property. The latter's warehouse was burglarized and radios belonging to Todd's were stolen. Appellant, insurer for Todd's, paid the loss and, as subrogee under its policy, brought this action against E.S.I. to recover the amount paid.

The case proceeded to a jury trial basically on the issues framed at pretrial—whether the loss occurred as a result of the carelessness or negligence of E.S.I. At the close of all testimony, E.S.I. moved for a directed verdict on the grounds that the insurance company had failed to prove the contract of insurance and its obligation to pay the loss. The trial court granted the

motion on the theory that, as appellant had failed to produce the insurance policy "which can be read into this record * * * there is as a matter of law no basis for a claim against the third party [E.S.I.]."

■ Primarily this appeal presents the question of whether appellant was required to introduce the policy of insurance in order to prove subrogation between it and Todd's. We think it was not.

■ We have had occasion previously to state the familiar and accepted rule respecting subrogation. The right of subrogation is based upon principles of equity and natural justice, and courts have liberally applied the principle of subrogation for the protection of those who are its natural beneficiaries. Bahn, to Use of Farm Bureau Mut. Auto Ins. Co. v. Shalev, D.C. Mun.App., 125 A.2d 678, 679. To effectuate this time-honored policy of the law, courts have consistently ignored technicalities and ruled that an insurer may enforce its rights against a wrongdoer independently of a subrogation provision in the insurance contract. Trinity Universal Insurance Co. v. Moore, D.C.Mun.App., 134 A.2d 333, 335. Courts have been equally consistent in holding that the insurer's right does not depend upon an actual, formal assignment—that an insurer may be subrogated against a tortfeasor, although no formal assignment has been executed. Equity confers "instanter" upon the insurer who has paid the same rights that belong to the policyholder. This is sometimes called an assignment by operation of law. Competent evidence of payment is plainly sufficient to establish the right of subrogation. Washington Air Compressor Rental Co. v. National U. Ins. Co., D.C.Mun.App., 165 A.2d 482, 485.

■ Aside from the fact that at no time from the commencement of the suit until the conclusion of all testimony had there been any question by appellee as to the right of the insurance company to bring this action as subrogee for Todd's,[1] there is ample evidence in the record to establish subrogation without production of the insurance policy.

■ We believe another matter requires comment. At pretrial the only issue framed was that of the negligence of appellee. At trial, however, after the conclusion of all testimony before the jury, a completely new theory of defense was raised for the first time. The primary purpose of pretrial is "to define the claims and defenses of the parties for the purpose of eliminating unnecessary proof and issues, lessening the opportunities for surprise and thereby expediting the trial." Rosden v. Leuthold, 107 U.S.App.D.C. 89, 92, 274 F.2d 747, 750. "To give full effect to the modernized rules, one of the theories of a case is not to remain a mystery or a matter of speculation and conjecture. It was to get away from legal sparring and fencing, and from surprise moves of litigants, that the new rules were adopted. * * * The refinement of these basic objectives is manifested in the increasing emphasis on the pre-trial processes. * * * Thus the pre-trial procedure, when utilized, becomes the principal means of defining issues in a case and the legal theories upon which they are to be tried." Meadow Gold Products Co. v. Wright, 108 U.S.App.D.C. 33, 35, 278 F.2d 867, 869.

■ Once issues to be litigated have been formulated at pretrial, parties should not be permitted at trial to inject new ones. The pretrial order is binding upon the parties and controls the subsequent course of action, unless modified to prevent manifest injustice. Otherwise the primary objectives of pretrial and discovery procedures under the rules of court would be defeated. GS-Rule 16; Fowler v. Crown-Zellerbach Cor-

1. In fact, in his opening statement, counsel for E.S.I. explained to the jury that, by reason of having paid Todd's pursuant to its burglary insurance policy, the insurance company had, by reason of law, become subrogated to the rights of Todd's.

poration, 9th Cir., 163 F.2d 773, 774, 14 A.L.R.2d 1337; Owen v. Schwartz, 85 U.S.App.D.C. 302, 177 F.2d 641; McCarthy v. Lerner Stores Corporation, D.C., 9 F.R.D. 31; Geopulos v. Mandes, D.C.D.C., 35 F. Supp. 276.

Although appellee complains that it was not afforded an opportunity at the time of the trial to see and examine the insurance policy or to have it admitted for its own benefit in connection with a section therein allegedly helpful to its defense, it seems to overlook that at pretrial it had ample opportunity to ask for an examination of the policy or to arrange for its production.

For the reasons stated we hold that the trial court committed error in granting a directed verdict for appellee at the conclusion of the evidence. The case should have been submitted to the jury for determination of issues of fact respecting liability and damages arising out of the bailor-bailee relationship.

Reversed with instructions to grant a new trial.