In 1915 defendant issued to plaintiff two policies of insurance, in accordance with applications therefor, one dated 1 June, the other 29 October. Both policies were on the ordinary life, double indemnity and total disability plan. By each policy, defendant promised and agreed to pay to Alice May Wamboldt, wife of plaintiff, at his death, subject to the terms and conditions set out therein, the sum of $5,000. To each policy were attached riders, forming a part thereof, providing, upon certain contingencies, for double indemnity and total disability. Each policy contained a clause, in words as follows: "If the premiums are duly paid as required, this policy shall be incontestable after it has been renewed beyond the first year." All premiums required to renew these policies and to keep them in full force have been duly paid.
On 23 May, 1921, plaintiff inquired by letter if defendant issued, and, if so, if it would then substitute for the riders attached to and forming a part of the policies as originally issued, riders providing for double indemnity, total disability and premium waiver. On 26 May, 1921, defendant, replying to plaintiff's inquiry, advised him that it issued a double indemnity, total disability and premium waiver certificate, as per sample enclosed, and that upon evidence of present insurability it would grant the additional benefit on the policies then held by plaintiff, issued in 1915. Pursuant to this correspondence, plaintiff, on 3 June, 1921, signed the formal applications sent to him by defendant for the additional protection, and forwarded same, by mail, to defendant. Each of the applications contained the following representations made to defendant by plaintiff: "I have no impairment of sight or hearing; am near-sighted, with astigmatism." "I have made no application for life, accident or health insurance in any company or association upon which I have not been notified of the action thereon. No application ever made by me for life, accident or health insurance has ever been declined." On 6 June, 1921, defendant acknowledged receipt of the application, *Page 34 
and of check sent therewith to pay the sum required by defendant for the additional protection. The check, however, was not for a sufficient amount to pay the sum required for the issuance of the certificate applied for on both policies, due to plaintiff's misapprehension of defendant's letter. This and other matters involved in the transaction were adjusted by further correspondence, and on 14 July, 1921, defendant returned the policies to plaintiff, with the certificate for double indemnity, total disability and premium waiver attached to each policy, in substitution for the rider which was attached to the policy at the time same was issued in 1915 and which had been canceled when the substituted rider was attached.
These certificates or riders are described as supplemental contracts; each bears the date of the policy to which it is attached, and not the date on which it was attached to the policy. Each rider recites that it is a component part of the contract, and that it is attached to and forms a part of the policy, which is referred to and called the principal contract. It is provided in each rider that "none of the conditions named in this supplemental contract shall be deemed to waive, modify or affect in any manner any of the conditions contained in the principal contract to which this supplemental contract is attached." The amount charged by defendant and paid by plaintiff, for the additional protection provided by the riders substituted for those attached originally to the policies, includes the reserve on each policy from the date of its issue to the date of the substitution, which would have been accumulated from additional premiums paid, had these riders been attached to and formed part of the policies from 1915, when they were issued, to 1921, when the riders were substituted for those which were canceled.
The rider, attached to each policy, includes the following clause: "The entire and irrecoverable loss of sight of both eyes will be considered as total and permanent disability within the meaning of this provision," i.e., the provision for payment to the insured, upon his permanent disability, of an annual income of five hundred dollars, and the further provision that upon the death of insured the principal contract shall be payable, in accordance with its terms, without deduction for any income payments. It is also provided that upon the insured's becoming permanently disabled, defendant will waive payment of further premiums on both the principal and the supplemental contracts.
Plaintiff alleges, in his complaint, "that on or about 1 January, 1922, while the said contract of insurance was in full force and effect, the plaintiff suffered the entire and irrecoverable loss of sight of both eyes and became entitled to all of the payments and benefits provided in said contract of insurance, in case of such loss of sight of both eyes." He further alleges that defendant has denied its liability to him under his *Page 35 
said policies, and has declined and refused to waive payment of premiums on his policies, since the date of his permanent disability, due to loss of sight of both eyes; that plaintiff has paid under protest to defendant the amount of said premiums. Plaintiff demands judgment that he recover of defendant the sum of $1,790.80, which includes the amount alleged to be due as annual income for a year and a half, and the amount paid under protest as premiums on both policies since the date of the permanent disability.
Defendant, in its answer, alleges that the supplemental contracts as evidenced by the riders attached to the policies did not become effective until the date on which they were attached, to wit, 14 July, 1921; that on said date, plaintiff was blind, having theretofore, to wit, on 9 June, 1921, suffered the entire and irrecoverable loss of sight of both eyes; that he was permanently disabled at the time the contract was made and that by reason of this fact, the said supplemental contract was and is null and void; and that defendant, immediately upon discovering the fact, tendered to plaintiff the sums paid as premiums for the said supplemental contracts, which plaintiff refused to accept.
Defendant, in its amended answer and counterclaim, verified on 3 October, 1923, alleges that it was induced to issue the supplemental contracts by false and fraudulent representations made by plaintiff in his applications therefor, to wit, that at the date of said applications plaintiff had no impairment of sight, and that at said date he had made no application for insurance on which he had not been notified of the action thereon, and that no application made by him for insurance had ever been declined. Defendant prays judgment directing the surrender by plaintiff of said supplemental contracts, and that same be declared null and void.
Plaintiff, in his reply to the answer and amended answer and counterclaim, denies the allegations contained therein, and renews his prayer for the relief demanded in his complaint.
On the trial, plaintiff testified that he became totally and permanently disabled by the total and irrecoverable loss of sight of both eyes on or about 1 January, 1922. He further testified that at the time of his correspondence with the defendant, resulting in the substitution of the riders, in accordance with his application dated 3 June, 1921, he was residing in the city of Atlanta, in the State of Georgia. He said, "I went home after lunch on 9 June, 1921, and, at the direction of my oculist, went to bed. He told me to go to bed, and to rest my eyes. I received calls from my oculist, in my room, on and after 9 June, 1921. I was in bed a good part of the time in a room with the shades to the windows pulled down. I was told that I would not have to remain in my room more than a week, but I was kept there from day to day, for nearly *Page 36 
a month. During this time I carried on my correspondence. I was in this room, with my shades down, when my policies were returned to me by defendant on 14 July, 1921, with the substituted riders attached. The trouble with my eyes was discovered suddenly, on 9 June, 1921. This was after I had signed the application on 3 June for the substituted riders. The trouble was caused, so I was informed, by the sudden detachment of the retina in each eye. I was told that if I would remain in bed, with my feet raised above my head, the retina would reattach. I did not communicate with the defendant company, and inform it of my condition. I made my application on 3 June and the trouble began on the 9th. I paid my premiums in December following, and again in June, 1922. I did not inform the defendant at either time of my trouble. I thought it was temporary and made no claim for permanent disability. As soon as I gave up hope of recovery — in the fall of 1922 — I notified the company of my condition, and on 8 September, 1922, made claim under my policies. I was then living in West Asheville, N.C. My attorney, who lived in Atlanta, filled out the form required for proof of my claim for total disability. It is stated therein that the date of the injury was 9 June, 1921. That is true, if it refers to the first trouble with my eyes; I subsequently got well, or got better. It is not true, if it refers to the date of my second trouble, which resulted in my total disability from loss of sight. I could not read the proof of claim under my policies, prepared by my attorney, who sent it to me for my signature. I could not read it because I could not see. They had to guide my hand to the line for the signature. I do not recall that it was read to me. I assume that it was, but I was in a rather upset frame of mind at that time. I recovered from the attack on 9 June, 1921. I could see very well after that time up until some time in December. My oculist in Atlanta told me that with a good rest of about two months, the retina in each eye would reattach. It did reattach apparently, so that I could walk about. I went to Florida, and there met friends and recognized them. I did not read, although I had reading glasses, given me by my oculist. I did not read because I wanted to make sure that the retina had reattached before I used my eyes. The doctor said I had sufficient vision for practical purposes, and that he thought I would retain that vision. While I was resting in Atlanta, I had conferences and negotiations about my work, as director of campaigns for contributions to colleges. As near as I can figure now, it was on or about I January, 1922, that I completely lost my sight. The second attack came after 1 December. I noticed a little dark shadow at the top of my eyes, and then it came on slowly and steadily, just like pulling down a curtain over a window. I could not tell you exactly when it commenced, but I noticed that there was a darkness over my eyes up here, and it *Page 37 
began to pull down, day by day, and about 1 January, 1922, I figure it went past the vision, so that I could not see. I had very good vision after my first attack in June, 1921, and Dr. Briggs said I had enough vision for practical purposes, enough so I was planning to go back into my campaign work again. I never dreamed, I never thought I was going blind when I had the correspondence with defendant in May, 1921, or when I applied for a change in my policies. I was improving right along. I had no reason to know that I was going blind; there is no blindness in our family, on either side, so far as I know. The company has not paid me a cent under the provisions of my policies."
There was evidence tending to show that at the time plaintiff applied to defendant for the supplemental contracts to be attached to his policies, he had applications pending with other companies for insurance; plaintiff made no statement to defendant company with reference to said applications.
There was also evidence tending to show that since his loss of sight, plaintiff had been writing articles for daily newspapers. Plaintiff testified that while he received pay for these articles, his expenses for stenographic services exceeded the amount received for this work; that the work was not remunerative, and was done solely for the purpose of keeping his mind occupied; that plaintiff had done no other work, and had been employed in no other business.
It was admitted, in response to a question by the court, that there was no controversy as to the amount which plaintiff was entitled to recover, if defendant was liable, as plaintiff alleged and contended.
At the close of plaintiff's evidence, defendant moved for judgment as of nonsuit. To the refusal of the court to allow this motion, defendant excepted.
The issue submitted to the jury was as follows:
"In what amount, if any, is defendant indebted to plaintiff? Answer: __________."
The court was of opinion that the riders attached to the policies, and designated as supplemental contracts, were parts of the policies issued by defendant to plaintiff, and that the incontestable clause, contained in each policy, applies to the rider or supplemental contract as well as to the original contract; that the policy is made up of and includes both the original and supplemental contract; that defendant is barred by said clause from setting up in defense of plaintiff's action, or in support of its prayer that the supplemental contracts be declared null and void and be surrendered by plaintiff, the facts relied upon by defendant to defeat plaintiff's recovery in this action.
The court instructed the jury that if they believed all the evidence, and found the facts to be as testified, they should answer the issue, "Yes, $1,790.80." Defendant excepted to this instruction. *Page 38 
From the judgment rendered upon the verdict, defendant appealed to the Supreme Court, assigning errors based upon its exceptions.
Defendant's principal contentions, in support of its appeal to this Court, as stated in its brief, are "(1) that since blindness antedated the making of the disability contract, there could have been no valid contract as against that hazard, under the rule that continued existence of the subject-matter is necessary to sustain a contract; (2) that the failure of plaintiff to disclose his condition pending the negotiations constituted a concealment of material facts which avoided the contracts in their entirety; (3) that said contracts were, also, avoided by plaintiff's misrepresentations as to the pending of applications for insurance in other companies; and (4) that the insured did not show total disability within the terms of the contract sued on." These contentions are presented by defendant's assignments of error, and are fully discussed in the brief filed by its counsel in this Court.
Plaintiff, in support of the judgment of the Superior Court, insofar as same is attacked by the first three of defendant's contentions, relies upon the clause in each policy, which provides that "if the premiums are duly paid as required, this policy shall be incontestable after it has been renewed beyond the first year." Plaintiff contends, that by reason of this clause, all the premiums required having been duly paid, and each policy having been renewed beyond the first year, these contentions are not available to defendant for the purpose of contesting the validity of the policies.
By paragraph 3 of article II of the supplemental contract, which is attached to and forms a part of each policy, it is provided that "the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, resulting from one accident, will of themselves be considered as total and permanent disability within the meaning of this provision." By the provision referred to, defendant agrees that if the insured becomes physically or mentally incapacitated to such an extent that he is and will be presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, defendant will waive payment of any premium payable upon the principal contract and the supplemental contract, and will pay to the insured an annual income of five hundred dollars. All the evidence tends to show that plaintiff has suffered an *Page 39 
entire and irrecoverable loss of sight of both eyes. This is a permanent disability, which by the terms of the contract, entitles plaintiff to the benefits provided therein. It is immaterial whether or not plaintiff has since the loss of his sight been able to engage in any occupation or to perform any work for compensation of financial value. It is only when the disability is not one of those included within paragraph 3 that the benefits of the provision are dependent upon the inability of the insured by reason of such disability, mental or physical, to engage in such occupation or to perform such work. Plaintiff having suffered the loss of sight of both eyes, which is entire and irrecoverable, it is immaterial whether or not he has since been able to engage in an occupation, or to perform work for compensation of financial value. Defendant's fourth contention cannot be sustained. There was no error in refusing to allow defendant's motion for judgment as of nonsuit, or in the instructions of the court to the jury, insofar as defendant's assignments of error involve this contention.
It must be conceded that if plaintiff's action is founded upon the policies, issued to him by defendant, without the distinction as contended by defendant, between the principal contract and the supplemental contracts, neither of the first three contentions of defendant can be sustained as supporting defendant's assignments of error upon this appeal. It is expressly provided in each of said policies that the policy shall be incontestable after it has been renewed beyond the first year, if the premiums are duly paid as required. The payment of all premiums on both policies, from 1915, when they were issued, to the date of the commencement of this action in 1923, is admitted. The policies are therefore incontestable upon either ground relied upon by defendant in said contentions; defendant will not be permitted, because of its express agreement to the contrary, to contest in this action the validity of the policies.
In Trust Co. v. Ins. Co., 173 N.C. 558, Justice Allen, writing the opinion for the Court, says: "The modern rule is that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted in that provision." Many authorities are cited in support of his statement of the law. In that case, this Court held that defendant could not avail itself of the plea that the insured was not in good health at the time of the delivery of the policy, and that for that reason under the terms of the policy, the contract never became operative. The incontestable clause was held to cover the defense of the bad health of the insured at the time of the delivery of the policy. It was also held that a defense based upon the allegation that the issuance and delivery of the policy was procured by false and fraudulent representations in the *Page 40 
application, would not be heard, if the policy contained an incontestable clause, which upon the facts admitted or established by evidence, was applicable. Justice Allen further says: "The authorities are practically uniform in holding that an incontestable clause, which gives a reasonable time for the insurance company to make investigation, is valid, and that it means what it says, that is, that after the time named in the clause has expired no defense can be set up against the collection of the policy, unless it comes within the excepted classes, named in the clause itself." The incontestable clause in a policy of life insurance was held valid inHardy v. Ins. Co., 180 N.C. 180, where Justice Allen says that the clause is contractual and is sufficiently pleaded when the policy containing the clause is made a part of the complaint. See 35 A.L.R., 1492n; 31 A.L.R., 109n; 13 A.L.R., 675; 6 A.L.R., 452.
In Indiana National Life Ins. Co. v. McGinnia (Ind.), 101 N.E. 289, 45 L.R.A. (N.S.), 192, Spencer, J., says: "It seems to be a well-recognized principle of insurance law that a provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such contract is valid, and precludes every defense to the policy other than the defenses excepted in the provision itself. It also seems to be generally held that such a clause precludes the defense of fraud, as well as other defenses, and that it is not invalid on the theory that it is against public policy, provided the time in which the defenses must be made is not unreasonably short." Many authorities are cited in the opinion to support this statement of the law. See Mass. Ben. Life Ins. Co. v. Robinson (Ga.), 42 L.R.A., 261.
Defendant, however, contends that in this action plaintiff seeks to enforce liability, not under the policies, which were issued in 1915, and are the principal contracts between the parties, each of which contains the incontestable clause relied upon by plaintiff, but under the supplemental contracts, which were entered into and attached to the policies on 14 July, 1921; no incontestable clause is contained in these supplemental contracts. The question, therefore, presented is whether the incontestable clause, contained in the policies, applies to the supplemental contracts attached thereto on 14 July, 1921.
These supplemental contracts were substituted for provisions in the principal contracts, which were parts of the policies as originally issued; each bears the same date as the principal contract to which it is attached; a sum was charged by defendant and paid by plaintiff sufficient to cover the reserve which the defendant would have accumulated against the additional liability if the contracts had been made on the dates, upon which the policies were respectively issued and the additional premium paid by plaintiff from the date on which the policies were *Page 41 
issued; it is specifically recited in each supplemental contract that it is a component part of the policy to which it is attached, and that none of the conditions named in the supplemental contract shall be deemed to waive, modify or affect in any manner any of the conditions contained in the principal contract to which the supplemental contract is attached.
"In the conduct of insurance business it often becomes necessary to add a new term to a policy, or to modify or waive an existing term. For this purpose insurers are accustomed to use little printed slips containing the desired writing, which are attached to the policy with mucilage and are termed `riders.' By reason of being annexed to the policy these riders are equally binding on the parties as if written in the face of the policy." Vance on Insurance, p. 185. "The contract of insurance, as usually made, contains the following elements: (a) all terms legally set forth on the face of the policy, or on the back thereof, if properly referred to; (b) all separate papers expressly designated and made part of the contract by the terms of the policy; (c) all riders attached to the policy with the consent of both parties." Vance on Insurance, p. 181. Lancaster v. Ins.Co., 153 N.C. 286.
"It is well settled that a rider attached to the policy is a part of the contract, to the same extent and with like effect as if embodied therein." 1 Joyce on Insurance (2 ed.), p. 516.
The supplemental contract attached to each policy on 14 July, 1921, by reason of the recitals therein became a part of the policy, and was subject to all the conditions applicable thereto contained in the policy to which it was attached; the incontestable clause, contained in the policy, is applicable to said supplemental contract, in an action to enforce liability thereunder, and no defense is available to defendant in such action after said policy, including as one of the elements of the contract the provisions of said supplemental contract, has become incontestable, except for the nonpayment of premiums.
The date upon which said supplemental contract became effective was not the date upon which it was attached to the policy, but the date of the policy; this was fixed by the defendant and accepted by plaintiff. As a result of this agreement as to the date from which it became effective, defendant collected the sums required for the reserve; having received a benefit from the agreement as to the date, it must accept the burden. InMutual Life Ins. Co. v. Hurni, 263 U.S. 167, 64 L.Ed., 235, it was held that where a clause in a life insurance policy provides that it shall be incontestable after a specified time "from its date of issue," the word "date" refers to the date of issue appearing on the face of the policy which was antedated by mutual consent of the parties and premiums paid from that date, and not to the time of actual execution of the policy or the time of its delivery. See 31 A.L.R., 112. *Page 42 
We must hold that the supplemental contract, attached on 14 July, 1921, to each policy issued by defendant to plaintiff, in 1915, was a part of the policy to which it was attached, and was subject to the incontestable clause contained in such policy; that by express agreement of the parties such supplemental contract became effective from the date appearing therein, and not from the date on which it was actually attached to the policy; that upon all the evidence submitted to the jury in this action no defense was available to defendant upon the supplemental contract which was not available in an action on the policy. The validity of the policy, including both the principal contract and the supplemental contract, cannot be contested by defendant in this action.
The assignments of error presenting the first three contentions of defendant cannot be sustained. The judgment is affirmed. There is
No error.