**COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, a corporation, Plaintiff-Appellant,**

v.

**Robert T. SMITH, Defendant-Appellee.**

**No. 60–69.**

United States Court of Appeals
Tenth Circuit.

Nov. 14, 1969.

Raymond J. Turner, Denver, Colo., for appellant.

Benjamin E. Sweet, Denver, Colo. (Howard J. Swenson, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This is a civil diversity action from the District Court for the District of Colorado in which the appellant Commercial Insurance Company originally brought suit to cancel and annul a disability insurance contract on the grounds that certain misstatements were made in both the original application for insurance and a subsequent application increasing the benefits. Appellee, a dentist, hereafter referred to as "Dr. Smith", originally filed only an answer, but subsequently counterclaimed for benefits under the policy.

At pre-trial conference the original complaint was technically dismissed and the matters averred therein were treated as an affirmative defense to the counterclaim. Trial to a jury resulted in a verdict and subsequent judgment in favor of Dr. Smith.

In February, 1963, and for many years prior thereto, Dr. Smith was a dentist practicing in Ft. Collins, Colorado. On February 13, he executed an application for a disability policy to be issued by the appellant insurance company. The policy provided for the payment of $50.-00 per week if Dr. Smith became disabled by sickness from performing his duties as a practicing dentist. The policy was issued on February 20. On June 11, 1963, Dr. Smith signed an application for an increase of the weekly benefits to $250, and this extended coverage became effective on July 20, 1963, by way of a rider to the original policy. The rider contains the following language:

"Attached to and forming a part of Policy No. BX 29002 dated 2–20–63 issued by the COMMERCIAL Insurance Company of NEWARK, N. J. to ROBERT T. SMITH."

In April, 1965, Dr. Smith filed a claim with the insurance company alleging that he was totally disabled from practicing dentistry due to a disease of his eyes and claiming benefits under the policy.

At the trial the evidence was undisputed that on March 19, 1965, Dr. Smith was totally disabled from practicing dentistry and that he was entitled to receive disability benefits under the policy unless, as the insurance company contended, the policy was obtained by fraudulent representations made by Dr. Smith in his applications for the policy and increased benefits.

The complaint of the insurance company, converted to a defense by virtue of the pre-trial order, claimed that Dr. Smith perpetrated a fraud on the insurance company by giving false answers to certain questions of the applications. Those questions are as follows:

"Q. Any other sickness, disease, or disability?

A. No.

Q. Have you been disabled by either accident or illness or received medical attention or advice during the past five years?

A. No.

Q. Are you now, to the best of your knowledge and belief in sound condition physically and mentally free of any physical deformity?

A. Yes."

and on the application for the increase:

"Q. Have you been disabled by either accident or illness or received medical attention during the past five years?

A. No.

Q. Are you now to the best of your knowledge, in good condition physically and mentally?

A. Yes."

The insurance company's main contention in the case was that Dr. Smith

knew, at the time he so answered the above questions, of the serious nature of his eye condition and therefore the company was entitled to rescind the insurance contract.

It appears that this contention cannot be discussed without a consideration of the clause required by Colorado statute, Colo.Rev.Stats. § 72–10–4(3), (1963) in the policy:

> " 'Time limit on certain defenses: (a) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability, * * *, commencing after the expiration of such two year period.
>
>   *   *   *   *   *   *
>
> " '(b) No claim for loss incurred or disability, * * *, commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or a specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.' "

Thus it can be seen that the contention concerns a construction of the meaning of the statutory phrase "except fraudulent misstatements." We now undertake that task.

Initially Commercial Insurance urges that the trial court was in error in submitting the case to the jury on instructions that the appellant must establish the legal elements of common law fraud which includes scienter or intent to defraud, instead of instructions setting out the equitable defense of fraud, as to which scienter or intent to defraud is not a necessary element.

Citing S. E. C. v. Capital Gains Research Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), the company takes the position that "[i]t is not necessary in a suit for equitable or prophylactic relief to establish all the elements required in a suit for monetary damages." *supra* at 193, 84 S.Ct. at 283. Thus they argue since this suit is for rescission of the contract, it was not necessary for the company to show that Dr. Smith intended to defraud with knowledge of the falsity of his statements.

The pre-trial order formulating the issues for trial controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. Fed.R.Civ.P. 16; Case v. Abrams, 352 F.2d 193 (10th Cir. 1965); Owen v. Schwartz, 85 U.S.App.D.C. 302, 177 F.2d 641, 14 A.L.R.2d 1337 (1949). The pre-trial order converted the fraud charged in the equitable complaint for rescission into a fraud defense answering the legal action for recovery filed as a counterclaim by Dr. Smith. This was stipulated in order to avoid problems concerning the question of the right to trial by jury.

Fed.R.Civ.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The original and amended complaint, converted to an answer by the pre-trial order, avers the above mentioned questions from the applications and then alleges that by virtue of the answers given, Dr. Smith perpetrated a fraud upon the insurance company. Thereafter, the complaint contains allegations of the doctor's knowledge of the falsity of the answers, together with the general language, "these answers were willfully, knowingly, and fraudulently false and were intentionally made for the purpose of misleading plaintiff [company] and inducing it to issue a policy of insurance applied for and which is involved in this litigation."

The pre-trial order sets out the issues which control this litigation and estab-

lishes the theory of the lawsuit in these words:

"2. Were the answers given to the questions set forth in paragraphs 3 and 4 in the section of the Pre-Trial Order entitled 'Agreed Facts' true or false?

"3. If the questions were answered falsely, did the defendant know or have reason to believe that his answers to the questions were false when made?

"4. Did the defendant answer the questions with the intention of deceiving the insurance company and inducing it to issue the policy of insurance?"

This court has said:

"It is of course true, despite the simplicity of pleading requirements under Rule 8(c), that defense by avoidance must be affirmatively pleaded. See Zeligson v. Hartman-Blair, Inc., 10 Cir., 135 F.2d 874. The purpose of this requirement is to give fair notice of defensive matter in order to avoid surprise. But even so, the pre-trial conference, after utilization of discovery, is the proper time and place for settling the triable issues in the case. It is the appropriate time and place for the parties to state the grounds upon which they expect to prevail in the lawsuit. And, once triable issues are thus agreed upon, they ought not be altered or modified except to prevent manifest injustice." Taylor v. Reo Motors, Inc., 275 F.2d 699, 704 (10th Cir. 1960).

■ The foregoing, together with the posture declared by Fed.R.Civ.P. 38(a),[1] sustain the trial court's tender of the theory by the instruction including the common law elements of fraud objected to by the appellant. See J. F. White Engineering Corp. v. General Ins. Co. of America, 351 F.2d 231 (10th Cir. 1965).

S. E. C. v. Capital Gains Research Bureau, *supra*, is inapposite in that it was an equitable action and stated the proper rule for that type of action. The pre-trial order in this case dismissed the equitable claim of appellant and gave appellee control of the claim which his counterclaim set forth. Thus construed, the pleadings required the company's response with fraud particularly averred and scienter generally stated.

A case completely in point, construing an almost identical policy provision, Johnson v. Metropolitan Life Ins. Co., 53 N.J. 423, 251 A.2d 257 (1969), agrees completely with this result. The court there stated that the question whether there must be an intent to deceive turns upon the statute [which is like the Colorado statute except it permits a three year contest period]. There, as here, after innocent misrepresentations were made on an application for insurance, the company sought to avoid the policy saying the concept of equitable fraud was preserved by the policy (and statutory) phrase "except fraudulent misstatements" and allowed rescission of the insurance contract without proof of intent to defraud. The court disagreed and held that intent to defraud was an element to be proven by the insurance company in order to avoid the policy after the expiration of the contestability period.

Commercial Insurance next contends that the two year incontestable clause of the statute was not applicable to the policy rider which increased the benefits under the policy and was attached to it in July, 1963. Its position is that two policies are here involved because the second part of the policy was added as a rider within two years of the claim and therefore it is a separate policy for which the two-year contest period has not yet expired. Accordingly, they contend they did not need to show fraudu-

1. Rule 38(a) reads as follows: "(a) Rights Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." For a full discussion of the impact of this rule, *see* 5 Moore's Federal Practice, ¶ 38.02 [2] (2d ed. 1968).

lent misstatements by Dr. Smith to avoid this policy, but rather any misstatement would operate to make the insurance contract void pursuant to Germania Life Ins. Co. v. Klein, 25 Colo.App. 326, 137 P. 73, 75 (1913). That case held that a policy is void if material misrepresentations are made by an applicant, regardless of whether made with intent to deceive. They therefore argue that it was error for the trial court to instruct that the two year period ran from February 20, 1963 (the date of the original effective date) for both applications. This issue pales in the light of the foregoing discussion relating to the issues agreed to in the pre-trial order.

■ The language set forth in the facts above consolidates the rider and the policy initially issued by the words "Attached to and forming part of policy. * * * " Thus we hold that the parties intended one policy, with an effective date of February 20, 1963, to govern the two year contestability clause. *See* Wamboldt v. Reserve Loan Life Ins. Co., 191 N.C. 32, 131 S.E. 395, 45 A.L.R. 1360 (1925). This conclusion is more clear when the brevity of the rider application is noted.

Commercial Insurance next contends that oral testimony, relating to statements made to the soliciting agent which were not contained in the signed written application of Smith, was erroneously admitted in evidence during the trial. Dr. Smith's daughter testified corroborating her father's testimony that he told the company's agent that he suffered from "night blindness" and had been "boarded from the Army because of it." This issue relates to the question of whether or not the testimony should have been excluded under the parol evidence rule or the provisions of Colo.Rev.

Stats. § 72–1–25 (1963).[2] The insurance contract also provides that the policy, endorsements and attached papers (including the application) constitute the entire policy.

In examining a question involving evidence admitted during the trial of a cause, we begin with Fed.R.Civ.P. 43(a). The rule is explicit in its direction, "In any case, the statute or rule which favors the reception of the evidence governs * * * ."[3]

■ The testimony concerning the conversation between Smith and the agent was material and relevant and therefore competent evidence to negate allegations of fraud. The Colorado rule is discussed and established in United American Life Ins. Co. v. Rebarchek, 134 F.Supp. 554 (D.Colo.1955), holding that parol evidence may be used to establish whether or not the answers given to the agent were fraudulent. Thus the testimony was not an attempt to vary the terms of a written agreement by parol evidence, "but rather [was] admissible under the rule that parol evidence is competent to refute an allegation of procuring insurance by fraud." Small v. Coastal States Life Ins. Co., 241 S.C. 344, 128 S.E.2d 175, 178 (1962). We hold the evidence was relevant in refuting the scienter element of fraud. *See also* Investors Preferred Life Ins. Co. v. Abraham, 375 F.2d 291, 295 (10th Cir. 1967).

■ It is next contended that irrespective of the soliciting agent's knowledge or advice, the insured adopted the misstatements as his own when he signed the policy. In Colorado, an insured adopts the application when he executes it even though he may not have read the application, Sun Fire Office v.

2. The pertinent part of the statute reads as follows: " * * * [B]ut no statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

3. *See also* Proposed Rules of Evidence for U. S. District Courts and Magistrates, Preliminary Draft, Rule 4–02 at p. 51 (March 1969). *See generally,* the discussion of rule 43 in Pasternak v. Pan American Petroleum Corp., 417 F.2d 1292 (10th Cir. 1969).

Wich, 6 Colo.App. 103, 39 P. 587 (1894); Knights & Ladies of Security v. Considine, 61 Colo. 474, 158 P. 282 (1916), although a different rule applies for illiterates.

■ Even though Dr. Smith may be held to have adopted the statements in the application, this did not shift the burden of proving fraud which was the critical issue. The company has the affirmative burden in avoiding a policy. Great-West Life Assurance Co. v. Levy, 382 F.2d 357 (10th Cir. 1967). Dr. Smith contends he did not know the seriousness of the eye disease which he called "night blindness" and which the insurer contends was "retinitis pigmentosa." The issue of scienter was presented and the jury decided in favor of the appellee, Dr. Smith. Therefore, the insurer failed to prove fraud clearly, cogently, convinceingly, and beyond a reasonable doubt. Olinger Mutual Benefit Ass'n v. Christy, 139 Colo. 425, 342 P.2d 1000 (1959).

■ It is further contended that the court erred in refusing to give a tendered instruction that it was Dr. Smith's duty to communicate particular information concerning his eye condition rather than the general information given.

The theory of the case as evidenced by the pre-trial order spelled out the insured's duty by premising it upon his intent to deceive. The tendered instruction eliminates the element of scienter or knowledge. If given, it would have relieved Commercial Insurance of the burden it carried throughout the case to prove fraud as agreed to in the pre-trial conference and as required by the nature of the action cast in the pre-trial order. The issue was whether Dr. Smith knowingly misstated with intent to deceive. The tendered instruction did not include these elements and therefore would not have defined the full burden of the defense of fraud.

■ Finally, the company asserts that its instruction establishing the duty of utmost good faith upon the insured should have been given. It is possible that such an instruction would have had the effect of shifting the burden of proving fraud from the insurance company. The real issue was not good faith but fraud and deceit as spelled out in the issues agreed to in the order which controlled the theory upon which the trial proceeded. Thus the tendered instruction was unnecessary.

The foregoing issues are directed to objections to instructions given and alternative instructions refused. This court has recognized the importance of the issues set forth in the pre-trial order in framing instructions. Case v. Abrams, *supra*, 352 F.2d at 196. We hold that the instructions adequately presented the issues of the pre-trial order, and that no prejudice resulted therefrom.

Affirmed.