**DIGNITY VIATICAL SETTLEMENT PARTNERS, Plaintiff,**

**v.**

**CEDALION SYSTEMS, INC., Unum Life Insurance Company of American, and Cedalion Systems Group Insurance Plan, Defendants.**

**No. 3:97CV93–McK.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 20, 1998.

---

Robert K. Trobich, Shuford, Hunter & Brown, P.A., Charlotte, NC, Luke DeGrand, Jennifer Holloway, Clark & DeGrand, Chicago, IL, for Dignity Viatical Settlement Partners, L.P.

George K. Evans, Jr., Cansler, Lockhart, Campbell, Evans, Bryant & Garlitz Charlotte, NC, for Unum Life Insurance Co. of America.

## ORDER

McKNIGHT, United States Magistrate Judge.

THIS MATTER is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the consent of the parties for ruling upon (1) Plaintiff's motion for summary judgment and (2) Defendant's motion for summary judgment.

## I. Factual and Procedural Background

Plaintiff initiated this action on February 28, 1997 against Defendants to recover $45,000 in life insurance benefits allegedly due under a UNUM group life insurance policy issued to Cedalion Systems, Inc. ("Cedalion"). It appears that Plaintiff only seeks to recover from UNUM, as Cedalion is in bankruptcy and has not appeared in this action. UNUM claims that it is not liable on Plaintiff's life insurance claim because the coverage at issue was obtained through material misrepresentations in the application submitted by Cedalion employee George Ellis Rigsby.

On February 1, 1990, UNUM issued its group policy to Cedalion. The policy provided various types of group coverage, including life insurance, to the eligible employees of Cedalion. Mr. Rigsby initially obtained $40,000 in life insurance coverage under the policy and plan. On February 6, 1992, Mr. Rigsby executed an application to increase his life insurance coverage by $50,000.00. The maximum increase available to him under the plan was $45,000.00, and such an increase had to be accompanied by evidence of insurability in the form of written responses to health questions.

In the application for an increase in coverage, Mr. Rigsby stated that he was in "good health—free from impairment & disorder." In addition, Mr. Rigsby answered "no" to the following question:

> During the past 5 years, have you:
>
> consulted, been examined or been treated by any physician or had observation or treatment at a clinic, hospital or sanitarium?
>
> had an x-ray, electrocardiogram or any other laboratory test?

(Defendant's App. at 87.) Because Mr. Rigsby's application revealed no adverse medical information, the application was approved for the maximum coverage increase of $45,000, effective February 1, 1992. (*Id.* at 2.)

On November 8, 1993, Mr. Rigsby assigned his life insurance benefits under the policy and plan to Plaintiff. (*Id.* at 88.) Less than a month later, on December 12, 1993, Mr. Rigsby died of AIDS. (*Id.* at 91.) Following his death, a Proof of Death form was submitted to UNUM, requesting $85,000 in life insurance benefits. (*Id.* at 89.)

On March 3, 1994, UNUM issued Plaintiff a check for $40,000. This amount represented the amount of coverage that Mr. Rigsby initially obtained under the policy and plan. In a letter sent with the check for $40,000, UNUM informed Plaintiff that it was conducting a contestable review for the remaining $45,000 of coverage that was obtained in February 1992. (*Id.* at 92.)

During its investigation, UNUM obtained treatment records dated March 1992 from Dr. Charles Rich of the Mecklenburg Medical Group. These records stated that Mr. Rigsby's "past history is significant for HIV positivity" and that Mr. Rigsby is being "fol-

lowed by a physician in Atlanta." (*Id.* at 93.) From these records, UNUM was able to obtain medical records from Dr. Melanie Thompson, the Atlanta physician referred to in the records from Dr. Rich. The medical records from Dr. Thompson revealed that Mr. Rigsby had been treated for HIV-related illnesses on several occasions between 1990 and 1992. (*Id.* at 121–37.)

In light of the above medical records, UNUM determined that Mr. Rigsby had not truthfully answered questions concerning his health in his 1992 application for an increase in coverage. Consequently, by letter dated February 6, 1995, UNUM informed Plaintiff that it was denying benefits for the coverage applied for in 1992.

On February 28, 1997, Plaintiff initiated this action against Defendants by filing a complaint in this court. On February 17, 1998, Plaintiff filed a motion for summary judgment, while Defendant filed a cross-motion for summary judgment. These motions are now ripe for disposition.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see* Fed. R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

In the present case, both Plaintiff and Defendant have filed a motion for summary judgment. In reviewing Plaintiff's motion for summary judgment, the court must view the facts and inferences in the light most favorable to Defendant. In reviewing Defendant's motion for summary judgment, the court must view the facts and inferences in the light most favorable to Plaintiff.

## III. Analysis

Defendant contends it is entitled to summary judgment on Plaintiff's claim for $45,-000 in life insurance because Mr. Rigsby did not truthfully answer questions concerning his health when he applied for additional insurance coverage in 1992. Plaintiff, on the other hand, argues it is entitled to summary judgment on its claim because an incontestability clause in Defendant's policy precludes Defendant from denying payment to Plaintiff. In the alternative, Plaintiff argues Defendant should be estopped from denying payment of insurance benefits because Plaintiff relied upon misstatements Defendant made when Plaintiff purchased the assignment of Mr. Rigsby's benefits.

### A. Standard of review

■ First, the court notes it must review Plaintiff's claim de novo. The Supreme Court has ruled that de novo review is required where an ERISA plan does not give the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Because the ERISA plan in the case at bar contains no provision giving Defendant discretionary authority, the court must review Plaintiff's claim de novo.

### B. Incontestability clause

Having determined the appropriate standard of review, the court must now determine whether the incontestability clause in Defendant's policy bars Defendant from denying Plaintiff benefits. The group life insurance policy issued to Cedalion contains a

section entitled "Life Insurance Incontestability." This section provides as follows:

> The validity of the employer's life insurance plan provided in this policy will not be contested after the insurance has been in force for at least 2 consecutive years, except for nonpayment of premiums by the Policyholder.
>
> No statements made by an employee while applying for life insurance will be used to contest the validity of that insurance:
>
> 1. after that insurance has been continuously in force for two years during an individual's lifetime; nor
> 2. unless those statements are contained in a written instrument signed by the employee and a copy of the instrument is or has been given to:
> a. the employee or
> b. the employee's beneficiary, if any.

(Defendant's App. at 29.)

Plaintiff contends the first paragraph of this section is applicable to Plaintiff's claim. As noted above, this paragraph states that an employer's life insurance plan may not be contested after it has been in force for two years. Because the paragraph does not indicate that the contestability period is effected by a subsequent increase in the amount of insurance, Plaintiff contends this paragraph bars Defendant from contesting Plaintiff's claim for benefits.

Defendant, however, argues the paragraph Plaintiff relies on only applies to challenges to the group policy or the plan itself, not to challenges to individual coverage. According to Defendant, only the second paragraph of this section applies to challenges to individual policies. Defendant argues that under the second paragraph, insurance does not become incontestable until it has been in force

for two years from the date such insurance was applied for. Here, because Mr. Rigsby died less than two years from the date the 1992 application for additional insurance was executed, Defendant argues it is not barred from contesting Plaintiff's claim.

A contract is to be interpreted as written, and where its terms are plain and unambiguous, there is no room for construction. *Jones v. Palace Realty Co.*, 226 N.C. 303, 305, 37 S.E.2d 906, 907 (1946). In interpreting a contract, the court must review the writing as a whole, giving each word and provision effect to the extent possible. *Atalla v. Abdul–Baki*, 976 F.2d 189, 193 (4th Cir.1992); *see also Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978) (contracts terms are to be harmoniously construed, and if possible, every word and every provision is to be given effect).

Here, if the court were to find, as Plaintiff contends, that the first paragraph of the Life Insurance Incontestability section applies to challenges to individual coverage, the second paragraph of the section would have no effect. In order to give the entire section meaning, the first paragraph must be interpreted as applying to challenges to the group policy, while the second paragraph must be interpreted as applying to challenges to individual policies. Such an interpretation is logical given the fact that the first paragraph deals with challenges to the "employer's life insurance plan." Moreover, it should be pointed out that in the present case, Defendant is not challenging the "employer's life insurance plan;" rather, Defendant is challenging Mr. Rigsby's 1992 application for insurance. Consequently, only the second paragraph of this section is applicable to Plaintiff's claim.[1]

---

1. The court notes that a separate provision of the certificate of coverage entitled "Life Insurance Incontestability For You And Your Dependents" provides as follows:

> What are the conditions for contesting the validity of any life insurance? No statements made by you while applying for life insurance will be used to contest the validity of that insurance:
>
> 1. after that insurance has been continuously in force for two years during that person's lifetime; nor

> 2. unless those statements are contained in a written instrument signed by you and a copy of that instrument is or has been given to:
> a. you; or
> b. your beneficiary, if any.

(Defendant's App. at 71.) This provision is essentially identical to the second paragraph of the section entitled "Life Insurance Incontestability." The plain language of this provision indicates that the provision sets forth the conditions for contesting an individual policy of life insurance. If the court were to determine that the

Having determined the applicable incontestability provision, the court must now determine whether this provision bars Defendant's challenge to Plaintiff's claim in the case at bar. As noted above, the incontestability clause provides, in pertinent part, that "[n]o statements made by an employee while applying for life insurance will be used to contest the validity of that insurance ... after that insurance has been continuously in force for two years during an individual's lifetime." Plaintiff argues this clause is ambiguous concerning whether an increase in life insurance gives rise to a new two year contestable period. Because the clause is ambiguous, Plaintiff contends the court must interpret the clause in Plaintiff's favor as reading that increases in insurance coverage do not affect the contestable period. Plaintiff argues that such an interpretation is dictated by North Carolina law as set forth in *Chavis v. Southern Life Ins. Co.*, 318 N.C. 259, 262, 347 S.E.2d 425 (1986). (Plaintiff's response at 2–3.) Under Plaintiff's interpretation of the incontestability clause, Mr. Rigsby's entire policy of insurance (including the additional $45,000 in coverage acquired in 1992) became incontestable as of September 1993, two years after the original policy was obtained.

Defendant contends Plaintiff's interpretation of the incontestable clause is at odds with the clause's plain language. According to Defendant, the plain language of the clause only prohibits Defendant from contesting insurance that has been in force for two years following the date the insurance was applied for. Because Mr. Rigsby died less than two years from the date he applied for the $45,000 increase in insurance, Defendant contends it may contest Plaintiff's claim.

As previously stated, the court must look to the contract language to ascertain the parties' intentions. If the language of the contract is clear and unambiguous, the court must interpret the contract as written, and cannot look beyond the terms to see what the parties' intent might have been. *Rosania v. Rosania*, 108 N.C.App. 58, 61, 422 S.E.2d 348, 350 (1992). "Clear and express language of the contract controls its meaning, and neither party may contend for an interpretation at variance with the language on the ground that the writing did not fully express his intent." *Olive v. Williams*, 42 N.C.App. 380, 383, 257 S.E.2d 90, 93 (1979).

Here, the court does not believe the incontestability provision at issue is ambiguous or capable of two interpretations The clause plainly states that "[n]o statements made by an employee while *applying for life insurance* will be used to contest the validity of *that insurance* . . . after *that insurance* has been continuously in force for two years." (emphasis added). The term "that insurance" clearly refers to the insurance applied for. There is simply nothing else that this term could refer to. Thus, in determining whether an insurance policy may be contested, the court must determine the date the insurance at issue was applied for. If the insurance has been in force for two years since the date it was applied for, it may not be contested.

In the present case, Mr. Rigsby applied for insurance on two occasions. First, Mr. Rigsby applied for, and obtained, $40,000 in coverage in September 1991. Thereafter, in February 1992, Mr. Rigsby applied for and obtained a $45,000 increase in coverage. The increase in coverage is the insurance at issue in the present case. Because the increase in coverage was applied for in February 1992, and because Mr. Rigsby died less than two years from the date "that insurance" was applied for, the incontestability clause, by its very terms, does not prevent Defendant from contesting Plaintiff's claim for $45,000.[2]

---

first paragraph of the section entitled Life Insurance Incontestability applied to challenges to individual insurance policies, as Plaintiff contends, the entire provision set forth above would be rendered meaningless. Consequently, the court finds the above provision (which is also set forth in paragraph two of "Life Insurance Incontestability") is applicable in the present case.

**2.** Despite Plaintiff's contentions to the contrary, the court does not believe *Chavis* mandates an opposite result. The court in *Chavis* was not presented with the same issue before this court. Instead, the *Chavis* court was faced with determining whether an incontestability clause is affected by the lapse and reinstatement of an insurance policy. 318 N.C. at 260, 347 S.E.2d at 426. The court found that when the policy at issue

Since the incontestability clause does not prevent Defendant from contesting Plaintiff's claim, Defendant may challenge Plaintiff's claim on the grounds that Mr. Rigsby misrepresented his health history on his 1992 insurance application. The evidence before the court indicates that if Mr. Rigsby had truthfully disclosed his health history on the 1992 application, Defendant would not have issued an increase in coverage. Thus, Defendant argues it should be permitted to rescind Plaintiff's 1992 contract for insurance. While Plaintiff does not dispute the fact that Defendant would have denied coverage if Mr. Rigsby had completed his application truthfully, Plaintiff argues Defendant should be equitably estopped from rescinding the contract of insurance. The court must therefore determine whether the doctrine of equitable estoppel is available in this action.

## C. Estoppel

Plaintiff contends Defendant should be estopped from rescinding the 1992 insurance contract because Plaintiff relied on misstatements by Defendant when it purchased the assignment of Mr. Rigsby's coverage. Plaintiff asserts that in purchasing the assignment, it relied on Defendant's statement that basic coverage began on "9/91" and that "no additional, supplemental or optional coverage" existed.

 The Fourth Circuit has determined that state law estoppel claims are preempted by ERISA because "such claims pose a risk of creating 'conflicting employer obligations and variable standards of recovery.'" *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 29 (4th Cir.) (quoting *Holland v. Burlington Indus.*, 772 F.2d 1140, 1147 (4th Cir.1985)), *cert. denied*, —— U.S. ——, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997). While the Fourth Circuit has allowed an estoppel claim to proceed under federal common law in at least one ERISA case, *see Elmore v. Cone Mills Corp.*, 23 F.3d 855 (4th Cir.1994), the court has never recognized estoppel arguments which would serve to vary the terms of a written ERISA plan. *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2432, 138 L.Ed.2d 194 (1997); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 59 (4th Cir.1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993). Any modification to an ERISA plan must be implemented in conformity with the formal amendment procedures and must be in writing. *Coleman*, 969 F.2d at 58–59. Thus, where an equitable estoppel claim would "threaten to override the explicit terms of an established ERISA benefit plan," such a claim may not be maintained. *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992); *see also White*, 114 F.3d at 29 (Plaintiff cannot "rely on the federal common law under ERISA, which does not incorporate the principles of waiver and estoppel.").

was reinstated, it was as if there had been no interruption in the policy's provisions, including the incontestability clause. *Id.* at 265, 347 S.E.2d at 429. According to the court, the contestability period ran from the date the policy was issued. *Id.*

In reaching its holding, however, the *Chavis* court was careful to distinguish the case from one in which there was a purchase of "additional" life insurance. *Id.* at 263, 347 S.E.2d at 428. The court stated that "[r]einstatement of a lapsed policy does not result in the issuance of new or additional insurance." *Id.* In light of this distinction, as well as the fact that *Chavis* did not resolve the issue presented in the case at bar, this court does not find *Chavis* persuasive.

Nor does the court believe that Plaintiff's position is supported by *Wamboldt v. Reserve Loan Life Ins. Co.*, 191 N.C. 32, 131 S.E. 395 (1926). In *Wamboldt*, the court held that the insurer was barred from contesting the supplemental policy because the contestability period set forth in the original policy had expired. *Id.* at 39–42, 131 S.E. 395. The court determined that the contestability period ran from the date of the original policy. *Id.* However, the court's holding in *Wamboldt* was premised on the language of the policies. The supplemental contract provided that it was to be effective as of the date the original policy was issued, and the incontestability clause set forth in the original policy was made "a component part of the supplemental contract." *Id.* at 41, 131 S.E. 395. Moreover, unlike the incontestability clause in the present case, the one in *Wamboldt* stated that "if the premiums are duly paid as required, this *policy* shall be incontestable after it has been renewed beyond the first year." *Id.* at 38, 131 S.E. 395 (emphasis added). Given the significant differences between the language in the policies in *Wamboldt* and the language in the policy in the case at bar, the court concludes *Wamboldt* is not persuasive.

■ In the present case, the insurance policy contains a clause dealing with misstatements of fact. This clause provides as follows:

> If relevant facts about any individual were not accurate:
>
> (1) a fair adjustment of the premium will be made; and
>
> (2) the true facts will decide if and in what amount insurance is valid under this policy.

(Defendant's App. at 46.) Thus, where a person misstates facts in an application for insurance, as did Mr. Rigsby in the case at bar, the written policy requires an adjustment in premiums and that "the true facts" determine the amount of insurance coverage, if any.

Here, if estoppel were to be applied, it would have the effect of overriding the Misstatement of Fact clause. Instead of the "true facts" determining the amount of coverage, Plaintiff would automatically recover all $45,000 in coverage. Because application of estoppel would serve to vary a term of the written plan, this court is required, under existing Fourth Circuit precedent, to deny Plaintiff's estoppel claim.

### D. Rescission

The final issue for the court is to determine whether Defendant may deny Plaintiff benefits under the theory of rescission. As stated, it is undisputed that Mr. Rigsby did not complete his insurance application truthfully. It is also undisputed that if Mr. Rigsby had truthfully completed the 1992 application, Defendant would have denied additional coverage. (Defendant's app. at 3.) Based on these undisputed facts, Defendant contends it should be allowed to rescind the contract pursuant to the policy's Misstatement of Fact clause.

■ After thoroughly reviewing all relevant law, this court agrees Defendant should be permitted to rescind the 1992 contract for insurance and deny Plaintiff's claim. Under North Carolina law, an insurer can avoid liability on an insurance policy by proving the insured made representations on his application which were material and untrue. *Tolbert v. Mutual Benefit Life Ins. Co.*, 236 N.C.

416, 418, 72 S.E.2d 915, 917 (1952). Although it is somewhat unclear as to whether ERISA preempts North Carolina insurance rescission law, the court need not resolve this issue. The court believes that even under federal common law, an insurer can deny coverage pursuant to a written clause in the contract, where the insured has misrepresented material facts on his application. Indeed, Plaintiff does not argue to the contrary.

In the present case, because the undisputed evidence establishes that Mr. Rigsby misrepresented material facts on his 1992 application for insurance, Defendant may deny coverage on Plaintiff's claim pursuant to the Misstatement of Fact clause.

### IV. Conclusion

Based on the foregoing reasons, it is **HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.